Clarence J. WILSON, et al.,
Plaintiffs-Appellants,

v.

JOHNS–MANVILLE SALES CORP., et al., Defendants-Appellees.

No. 85–2727.

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1987.

Rehearing and Rehearing En Banc
Denied March 26, 1987.

See also, D.C., 107 F.R.D. 250.

---

Grant Kaiser, Robert E. Ballard, Houston, Tex., for plaintiffs-appellants.

Michael B. Schwartz, Butler, Binion, Rice, Cook & Knapp, Elizabeth Thompson, Houston, Tex., for Raymark Industries, Inc.

Richard L. Josephson, Baker & Botts, Arthur Stamm, Houston, Tex., for Armstrong World Industries, Eagle-Picher, Owens-Illinois, Inc. and Owens-Corning Fiberglas.

Weller, Wheelus & Green, David L. Tolin, Beaumont, Tex., for Fibreboard Corp.

Mehaffey, Weber, Keith & Gonsoulin, Gene M. Williams, Sandra F. Clark, Beaumont, Tex., for Standard Insulations, Inc.

Hallmark & Boswell, John H. Boswell, Houston, Tex., for Armstrong World Industries.

Gray & Keene, Richard C. Keene, San Antonio, Tex., for Forth-Eight Insulations, Inc.

Benckenstein, Norvell & Bernsen, Gail C. Jenkins, Beaumont, Tex., for Celotex Corp.

Before GEE, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal is from a jury verdict favoring appellees, manufacturers of asbestos products, in a consolidated products liability action involving fifty claimants. Appellants, the claimants, challenge three discretionary rulings of the district court and ask that the case be reversed and remanded for a new trial. They claim that the district court erred in failing to sustain their challenge for cause to one of the prospective jurors, in allowing appellees to make improper and prejudicial comments during opening statement, and in excluding the testimony of one of their expert witnesses. Because we find that the district court did not abuse its discretion, we affirm the judgment.

## I. *Facts*

Appellants comprise a group of fifty insulators, pipe fitters, and electricians allegedly suffering from asbestos-related injuries and illnesses. Appellees are or were manufacturers of asbestos-containing insulation products. Each appellant individually had brought suit against the manufacturers in the Galveston Division of the United States District Court for the Southern District of Texas. Their causes of action were consolidated by order of the district court on February 21, 1985.

The district court ordered separate trials on the issues of liability and damages pursuant to Fed.R.Civ.P. 42(a). There first was to be a single trial to determine whether the manufacturers generally were liable to the claimants and whether punitive damages should be assessed. If the claimants prevailed on the issue of the manufacturers' liability, the court then would order separate trials to determine each individual's damages.

In the trial of the common issue of general liability, the jury found that while most of the products contained asbestos and were capable of producing sufficient dust to cause bodily injury, only Celotex

Corp., Pittsburgh-Corning Corp., and Ray-Mark Industries, Inc. could be liable to appellants because they failed to warn adequately of the dangers of their asbestos-containing products. The jury also determined that none of the manufacturers had acted carelessly or recklessly. No punitive damages were assessed. The district court decided that there was no just reason for delay and entered a final judgment in favor of Armstrong World Industries, Eagle-Picher Industries, Inc., Fibreboard Corp., Owens-Corning Fiberglass Corp., Owens-Illinois, Inc., and Standard Insulations, Inc. Appellants then filed a timely notice of appeal from the take-nothing judgment involving the six appellees. The three remaining appellees did not seek an interlocutory appeal in this action, and their cases are still pending before the district court.

## II. *The Challenge for Cause*

■ Appellants request us to reverse the decision below and remand for a new trial because the district court erred in refusing to sustain their challenge for cause to one of the veniremen, Dr. Wang. They contend that Dr. Wang's responses to questions posed by the district court clearly indicated the existence of actual prejudice and that, once bias was established, they automatically were entitled to have the district court excuse Dr. Wang. By denying their challenge for cause, the district court forced appellants to use one of their peremptory challenges to strike Dr. Wang from the jury panel. Appellants also claim that as a result of the necessity to use a peremptory challenge when grounds for a challenge for cause had been established, they were unable to remove another objectionable juror, John B. Leverton, from the panel. Thus, they assert prejudice by the error of the district court. We do not find appellants allegations to be justified.

At the commencement of voir dire, the district court asked all of the prospective jurors, "Do have [sic] you have any connection at all, have any particular interest in or know anything particularly about any of these corporations, each of which at one time, if not now, was in the business of manufacturing and marketing asbestos products?" Dr. Wang informed the court that he was a research chemist with Dow Chemical and that, while he had never worked with asbestos, he had read about it. He stated that "the carcinogenicity [of asbestos] was not known until several years ago."

Dr. Wang's comments indicated the existence of some potential area of bias on his part. Once the possibility of actual prejudice has emerged, appellants argue that "the court has the duty to develop the facts fully enough so that it can make an informed judgment on the question of 'actual' bias." *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir.1976). We find no error in the district court's exercise of discretion in carrying out this duty.

After Dr. Wang made known his familiarity with asbestos, the district court immediately asked him to approach the bench. In the presence of counsel, the court conferred with him about his ability to return a verdict based solely on the evidence.[1]

---

1. While at the bench, the following conversation took place:

> THE COURT: You are a chemist and you have read about asbestos?
> JUROR WANG: Yes.
> THE COURT: And what is it that you read about it that you wish now to report?
> JUROR WANG: Well, it's a carcinogenic, asbestos is known, for maybe about three or four years ago, maybe.
> THE COURT: Okay.
> JUROR WANG: And I'm making a new chemical which is usually not known as a carcinogenic or whatnot. You're making a compound and you don't—

THE COURT: Just a second. I want the best answer you can give me to this: Could you sit as a juror and listen to the evidence, and there's going to be evidence with regard to the characteristics of asbestos and what was known about asbestos at a given time in the past, and accept that testimony after you have weighed it for credibility, and come to a verdict based only on the evidence that you hear developed during the course of this trial; can you do that?
> JUROR WANG: I'm afraid that I'm a little bit partial.
> THE COURT: All right. You would—you would import into your thinking things that

While Dr. Wang indicated that it would be difficult for him to be impartial, we cannot say that this evidence of bias is automatically disqualifying. The court apparently was satisfied by Dr. Wang's response and demeanor, and appellants made no objection.

After the court finished its own examination of the veniremen, all of the parties were allowed to examine the prospective jurors in order to explore fully any problems which they may have perceived. Appellants used this opportunity to question Dr. Wang extensively about the nature and scope of his employment at Dow Chemical, a company which they claimed was deeply involved in asbestos litigation. This concern served as the sole basis of appellants' challenge for cause to Dr. Wang.[2] The issue of actual or potential personal bias on the part of Dr. Wang was never raised by appellants until this appeal.

Since the district court is in the best position to observe the juror and to make a first-hand evaluation of his ability to be fair, it is given broad discretion in determining a juror's impartiality. *United States v. Salinas*, 654 F.2d 319, 328 (5th Cir.1981). "The determination as to the impartiality of a juror ... will not be reversed absent an abuse of [the court's] discretion." *United States v. Apodaca*, 666 F.2d 89, 94 (5th Cir.1982). *See also United States v. Brown*, 644 F.2d 101, 104 (2d Cir.1981) ("In order for a trial judge's determination of a juror's impartiality to be set aside, there must be shown 'manifest' prejudice.").

We find nothing in this case requiring us to reverse the decision of the district court. There is no question that the district court correctly denied the challenge for cause on the basis of Dr. Wang's employment with Dow Chemical. *See Lusich v. Bloomfield Steamship Co.*, 355 F.2d 770, 775 (5th Cir. 1966) ("The mere fact alone that a member of the jury panel is in the same business as that of one of the litigants ... does not make him subject to challenge for cause."). The question of Dr. Wang's bias is somewhat ambiguous, and since counsel for appellants neither pursued the matter nor mentioned it in their challenge for cause, we do not find an abuse of discretion requiring a new trial.

*Hopkins v. County of Laramie, Wyoming*, 730 F.2d 603, 605 (10th Cir.1984) is closely analogous. It involved a civil rights action under 42 U.S.C. § 1983. At the conclusion of the voir dire, plaintiffs challenged three jurors for cause. The court denied the challenges, but asked plaintiffs if they had any further questions. They did not, and plaintiffs then exercised three peremptory challenges to excuse the jurors. On appeal, the Tenth Circuit found that since plaintiffs' counsel did not take advantage of the opportunity to convince the court of the propriety of the challenges for cause by asking further questions, it was not an abuse of discretion for the district court to deny the challenges. To the same effect is *United States v. Brown*, 644 F.2d 101 (2d Cir.1981), a criminal case. The defendant in *Brown* claimed that the district court should have sustained a challenge for cause to a potential juror who worked for another branch of the bank the defendant allegedly had robbed. Instead, the juror had to be removed by the use of a peremptory challenge. Upon appeal, the court held that since defense counsel was given the opportunity at trial to prove the

---

you knew regardless of what might be said upon the stand?
JUROR WANG: Yes, sir.
THE COURT: All right. Thank you.

2. The following exchange took place at the close of voir dire:
MR. BALLARD: Your Honor, along that line, could we challenge Dr. Wang? He's the chemist that works for Dow and is very involved in asbestos litigation before this very Court?

THE COURT: Has he been involved before this Court?
MR. BALLARD: He hasn't, but his employer has, and he's in the chemistry department.
THE COURT: Is there any objection to the challenging?
MR. STAMM: We object.
THE COURT: I do not see a basis for challenging for cause.

contention that the prospective juror possessed actual bias and that opportunity was not pursued, the district court did not commit error by not finding such bias.

Since we find there was no abuse of discretion in the court's decision not to grant appellants' challenge of Dr. Wang for cause, we need not go into the question of whether prejudice resulting from an abuse of discretion has been shown.

### III. *Opening Statement*

■ Appellants claim that appellees' prejudicial arguments during opening statement effectively denied them a fair trial.[3] We are not persuaded. "To justify a reversal based on improper comments of counsel, the conduct must be such as to gravely impair the calm and dispassionate consideration of the case by the jury." *Dixon v. International Harvester Co.*, 754 F.2d 573, 585 (5th Cir.1985). The alleged offending remarks were made at the commencement of a three week trial which included the testimony of numerous live witnesses and the introduction of a large number of depositions and exhibits. It is highly unlikely that a few somewhat exaggerated statements by appellees' counsel in his opening presentation so impermissibly tainted the jury's verdict as to require a new trial.

Additionally, the district court clearly instructed the jury at the beginning of opening statement:

On the other side, there is this statement that you should always keep in mind, and that is, what the attorneys say in opening statement and, lastly, in argument to you, when all the evidence is in, that what the attorneys say is not evidence. This is clearly so, because the attorneys will speak much, but they are not going to say a single word as a witness under oath, sitting in the witness box. And it

is from there that the evidence comes. So what the attorneys say is not evidence. And you will keep that in mind.

The court repeated its warning after all the parties had made their opening statements:

A brief comment before we conclude.... I told you, and I will again remind you that the factual assertions that the attorneys have made in their opening statements is not evidence.... And secondly, the lawyers have recited what they think the Court is going to instruct you. They may and then again they may not be correct in that regard.

These cautionary instructions specifically address and effectively defuse possible prejudice that might have arisen assuming appellees' comments during opening statement went beyond proper bounds.

We have held that objectionable comments should be considered "within the context of the court's rulings on objections, the jury charge, and any corrective measures applied by the trial court. Alleged improprieties may well be cured by an admonition or charge to the jury." *Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir.1985) (closing argument challenged for impropriety.) In viewing the opening statement as a whole, we find that the effect of appellees' allegedly improper statements, although somewhat more extreme than is the norm, was not prejudicial, especially in light of the court's cautionary instructions.

### IV. *Exclusion of Expert Witness*

■ Appellants' final contention is that the district court abused its discretion by excluding the testimony of Barry Castleman, one of appellants' expert witnesses. The exclusion, however, was the result of Castleman's deliberate refusal to produce certain discovery material which the court deemed relevant to appellees' case.[4] "Con-

---

**3.** Appellants allege that appellees' statements that "plaintiffs' assertion of gross negligence are pure nonsense" and that their "real motivation" was "simple greed" were improper appeals to prejudice and passion. They also claim that the comments concerning the jury as the final arbi-

ter of what was fair were far beyond the proper scope of an opening statement.

**4.** The court ordered Castleman to produce the following items before he would be allowed to testify:

trol of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable." *Mayo v. Tri-Bell Industries, Inc.*, 787 F.2d 1007, 1012 (5th Cir.1986). We do not find any abuse of discretion.

The issue arose when appellees served Castleman with a subpoena *duces tecum* to produce certain documents at his deposition on April 9, 1985 in Houston.[5] Castleman stated at the deposition that he would not produce the documents because he did not feel that the discovery order was appropriate. Castleman testified that the production of written correspondence between him and any asbestos litigation defendants, plaintiffs, litigation groups, or governmental agencies would threaten his ability to earn a living and would potentially jeopardize confidential relationships. There was no justification, however, for Castleman's refusal to comply with the court's order since the documents might have contained relevant information that Castleman was a paid "expert" witness in a number of asbestos cases and the amount of money he had earned through such testimony.

After Castleman's refusal, appellees moved for sanctions, and the district court ordered that Castleman not be permitted to testify until he complied with the discovery request. The exclusion was conditional, and Castleman was given every opportunity to produce the necessary documents. It is well established that "the district court has discretion to impose appropriate sanctions against noncompliance with discovery requests." *Carson v. Polley*, 689 F.2d 562, 586 (5th Cir.1982). This sanction was appropriate. Further, no showing is made that Castleman was the only expert who could testify in support of appellants. Appellants were not deprived of their case by the exclusion of a single recalcitrant witness.

### CONCLUSION

The district court did not abuse its discretion in deciding the three procedural issues now before this Court. The judgment of the district court is

AFFIRMED.

1. Copies of any articles, pamphlets, parts of books or books written by you or to which you contributed, which are related to your expected testimony, whether actually published or not, and a list of all such documents.
2. Copies of any written correspondence which you have sent to or received from any organization that represents any concern in the asbestos litigation, whether a defendant plaintiff or litigation group.

3. Copies of any written correspondence which you have sent to or received from any governmental agency regarding asbestos, asbestos-related disease, the current defendants or any former defendants of these lawsuits, or relating to regulation of any industry that utilizes asbestos-containing products.

5. Appellees had attempted to depose Castleman on March 20, 1985 in Washington, D.C., but he failed to appear.