**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Duane Lynn THIEL, Defendant and Appellant.**

**Cr. No. 930015.**

Supreme Court of North Dakota.

April 20, 1994.

Brian David Grosinger (argued), Asst. State's Atty., Mandan, for plaintiff and appellee.

Michael Ray Hoffman (argued), Bismarck, for defendant and appellant.

NEUMANN, Justice.

Duane Thiel (Thiel) appeals from a judgment of conviction for class AA felony murder, in violation of Section 12.1–16–01, N.D.C.C. Thiel also appeals from orders denying his motions for new trial. We affirm the judgment of conviction and the orders denying a new trial.

The body of Thiel's brother, Warren, was found at Warren's rural home on February 1, 1992, by Warren's son, Mitch, and Morton County Deputy Sheriff, Bryan Kirchmeier. An autopsy was conducted, and the medical examiner concluded that Warren died of "homicidal gunshot wounds to the head and chest." The murder weapon, Warren's Remington .22 caliber bolt-action rifle, was dis-

covered by law enforcement officers at an abandoned farmsite southwest of New Salem a couple of days after Warren's body was discovered. After an investigation, Thiel was arrested, tried, and convicted by a jury of murdering Warren. The court sentenced Thiel to 15 years in the state penitentiary, and Thiel filed this appeal.

On appeal Thiel asserts that the trial court erred in denying his motions for new trial. Thiel had made two separate motions to the trial court for a new trial, alleging three separate grounds in support of his motions: (1) there is insufficient evidence to convict and the weight of the evidence does not support the conviction; (2) the prosecutor made irrelevant and prejudicial comments during opening statement; and (3) evidence discovered after the trial shows that the government's key witness committed perjury at the trial, thereby denying Thiel of his constitutional due process right to a fair trial.

Rule 33(a), N.D.R.Crim.P., states:

"The court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice. The motion for a new trial must point out with particularity the defects and errors complained of."

This court will not set aside a trial court's denial of a motion for a new trial unless the trial court has abused its discretion in denying the motion. *State v. Garcia,* 462 N.W.2d 123 (N.D.1990).

Thiel asserts that there is insufficient evidence to support his conviction and also that the guilty verdict is against the weight of the evidence. In *State v. Kringstad,* 353 N.W.2d 302, 306–307 (N.D.1984), we explained the distinction between evidentiary sufficiency and evidentiary weight:

"A conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational factfinder could have found the defendant guilty beyond a reasonable doubt.... The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars retrial in such a case.... It follows, there-

fore, that our review of an appeal founded upon alleged evidentiary insufficiency must be subject to the same standard as an appeal from a judgment of guilty, or an appeal from the denial of a motion for entry of a judgment of acquittal; that is, we will look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to determine if there is substantial evidence to support the conviction.

\*    \*    \*    \*    \*    \*

"When a motion for a new trial is made on the ground that the verdict is against the weight of the evidence the issues are far different. The trial judge may, within limits, weigh the evidence and in so doing evaluate for himself the credibility of the witnesses.

\*    \*    \*    \*    \*    \*

"[I]t is within the discretion of a trial court to grant a new trial if it concludes that a guilty verdict is against the weight of the evidence." [Citations omitted.]

The following evidence, viewed in a light most favorable to the verdict, supports the murder conviction. Warren's body was found seated in a chair with a blanket draped around it. That was circumstantial evidence to the investigators that Warren's killer was a friend or relative, not a stranger. Thiel appeared at the scene while law enforcement officers and medical personnel were tending to Warren's body. Thiel showed no remorse and told persons there that the guns and everything else on the farmstead were his. Deputy Kirschmeier testified that when Thiel arrived at the scene he said, "who shot my brother?" At that time no one at the scene had disclosed that Warren's death was caused by a shooting. Morton County Sheriff, Leo Schneider, testified that when Thiel arrived at the scene he also said, "Are you going to do an autopsy?" That statement was also made before anyone at the scene had disclosed that foul play was suspected in Warren's death. Later that day William Lang, a longtime acquaintance of the defendant, saw Thiel in a New Salem bar. Lang testified:

"He came walking in the bar and I says to him, 'I hear they found Warren dead today? Did he die of a heart attack?' He said, 'No, he was shot twice.' That's the words he told me and that's all I can say about it."

Not even the law enforcement officers investigating Warren's death knew or had any reason to suspect that Warren had been shot twice until several days later when the medical examiner's autopsy report revealed that there was one gunshot wound to Warren's head and a second gunshot wound to his chest.

Benji Lillestol, a licensed practical nurse and the medical liaison officer at the Morton County Correctional Center, testified that while she was taking Thiel's blood pressure at the county jail Thiel said to her, "Benji, there is more going on than you know. I aint [sic] the only one."

The prosecutor's key witness in this case was Michael Hunter, who was a cellmate with Thiel in the county jail. Hunter testified that Thiel told him, "he had shot his brother" and that he had used some checks to coerce a guy "to help him murder" his seventy-one year old brother. Hunter also testified that Thiel told him that Warren had been a burden to him and to their mother.

A conviction rests upon insufficient evidence only when no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gefroh*, 495 N.W.2d 651 (N.D.1993). We conclude that, viewing the evidence in a light most favorable to the verdict, a rational factfinder could find Thiel guilty beyond a reasonable doubt of having murdered Warren. Therefore, we conclude that the evidence was legally sufficient to support the conviction. We also conclude that the evidence does not so preponderate against the guilty verdict that we can say the trial court abused its discretion in refusing to grant a new trial on the ground that the verdict is against the weight of the evidence.

Thiel also asserts that the trial court abused its discretion in refusing to grant a new trial because the prosecutor made the following inappropriate and prejudicial remarks during the opening statement:

"As the judge had instructed you, there are two types of evidence that may be presented for your consideration. There is direct evidence and there is circumstantial evidence and the judge has given you and will give you the precise guidelines concerning those two general types of evidence, but for the purpose of my opening statement today, let me say that direct evidence in a murder case such as this would be an eyewitness or the smoking gun or confessing to a newspaper reporter like August Vogel did to Lucille Hendrickson of the Mandan Pioneer in 1966."

Defense counsel immediately objected to the reference about the Vogel confession. The trial court responded:

"It's not relevant. The jury will ignore that comment. It's really not relevant."

The determination to grant or deny a new trial for misconduct of counsel rests within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *State v. Kaiser*, 417 N.W.2d 376 (N.D.1987). Although it is inappropriate for counsel to make remarks for the purpose of arousing sympathy or prejudice, not every improper remark warrants reversal of a criminal conviction. *State v. Paulson*, 477 N.W.2d 208 (N.D.1991). Here, the prosecutor's passing reference to a confession in another case, as an example of direct evidence, was not highly prejudicial. Furthermore, in response to defense counsel's objection the trial court admonished the jury to ignore the comment. We presume that a jury will follow the trial court's admonition. *State v. Paulson, supra*, 477 N.W.2d at 210. We conclude that the trial court did not abuse its discretion in refusing to grant a new trial because of the prosecutor's remarks during opening statement.

Thiel also asserts that the trial court abused its discretion in refusing to grant him a new trial on the ground that newly discovered evidence shows the prosecutor's key witness, Michael Hunter, gave false testimony at the trial.

Hunter was a cellmate with Thiel in April 1992 while Hunter was awaiting trial on federal charges for interstate transportation of

stolen checks. Hunter came forward and told authorities about Thiel's confession. He said that he wanted assistance with getting bail in return for testifying at Thiel's trial. Hunter did not get bail assistance, and he was subsequently convicted on the federal stolen check charges. Thereafter Hunter traveled to the State of Washington where he allegedly threatened to kill a federal judge and two federal prosecutors. Hunter was in jail in Washington pending trial on those charges when he was transported back to North Dakota to testify at Thiel's trial. Regarding the Washington charges Hunter testified:

> "I will be released as soon as I get back. The charges are being disposed of without conviction. That has already been agreed."

He also testified that he was not getting any assistance on the pending Washington charges for his testimony at Thiel's trial, that those charges were going to be dropped, and that there would be "no plea of guilty involved." About nine days after testifying at Thiel's trial, Hunter pled guilty to the Washington charges and was given a reduced sentence in consideration for his testimony at Thiel's trial.

In support of his motion for new trial, Thiel presented Hunter's Washington plea agreement as newly discovered evidence that Hunter had falsely testified at Thiel's trial that there had been an agreement to drop the Washington charges and that Washington authorities would not give Hunter any consideration for his North Dakota testimony. The trial court denied Thiel's motion, stating:

> "The proposed information which defendant seeks to discover runs solely to collateral matters concerning Mr. Hunter and not to the case itself. It is solely information used for purposes of impeaching Mr. Hunter. The defendant claims it to be perjury. I doubt whether such statements made or denied in Mr. Hunter's testimony could reach that standard. In addition, I am satisfied that the inclusion of such information would not have elevated the testimony to such a degree as to cause an acquittal.

> "The transcript of the evidence shows that the cross examination of Mr. Hunter took nearly fifteen pages. Most of the information presented during that time related to his prior convictions, his schizophrenic personality and his present legal difficulties. I do not believe the inclusion of one more statement one way or the other would have made any impression upon the people in the jury box."

■ Generally, to get a new trial on the ground of newly discovered evidence the defendant must show that (1) the evidence was discovered after trial, (2) failure to learn about the evidence at the time of trial was not the result of the defendant's lack of diligence, (3) the newly discovered evidence is material to the issues at trial, and (4) the weight and quality of the newly discovered evidence would likely result in an acquittal. *State v. VanNatta,* 506 N.W.2d 63 (N.D. 1993). A motion for a new trial on the ground of newly discovered evidence is addressed to the trial court's sound discretion and will not be set aside on appeal unless the court has abused its discretion. *State v. Hegland,* 355 N.W.2d 803 (N.D.1984).

■ If the newly discovered evidence shows that the prosecutor knowingly used false testimony, the defendant's due process right to a fair trial is violated and the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. State of Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *see also United States v. Bigeleisen,* 625 F.2d 203 (8th Cir.1980). *See also* C. Wright, Federal Practice and Procedure: Criminal 2d § 557.1 (1982).

■ Thiel asserts that the prosecutor should have known that Hunter was lying when he testified that the authorities in Washington had already agreed to drop the charges against him, because the prosecutor had a duty to inquire about the status of the Washington charges. However, Thiel cites no persuasive authority to support his assertion that the prosecutor had a duty to make such an inquiry, and we are not persuaded

there was such a duty under the circumstances of this case. Hunter had come forward with his statement about Thiel's confession before he traveled to Washington and before the events leading to the Washington charges had transpired. Those charges were not relevant to any of Hunter's dealings with the prosecutor here, and Hunter was not promised any consideration or given any assistance by the prosecutor here for his testimony at Thiel's trial. Both the prosecutor and defense counsel learned of the Washington charges at the same time, when they deposed Hunter more than two months before Thiel's trial. We conclude that under these circumstances the prosecutor neither knew nor had reason to know at the trial that Hunter was giving false testimony.

■ If the newly discovered evidence shows, as in this case, that a government witness gave false testimony about which the prosecutor neither had actual knowledge nor reason to know, the standard for granting a new trial varies considerably from jurisdiction to jurisdiction. *See* Sonja A. Soehnel, Annot., *What Standard, Regarding Necessity for Change of Trial Result, Applies in Granting New Trial Pursuant to Rule 33 of Federal Rules of Criminal Procedure for Newly Discovered Evidence of False Testimony by Prosecution Witness,* 59 A.L.R.Fed. 657 (1982). One standard used for the unknowing use of false testimony by the prosecutor is whether there is a reasonable possibility that the use of the false testimony affected the verdict. *United States v. Endicott,* 869 F.2d 452 (9th Cir.1989). Another standard, adopted by the United States Court of Appeals for the Second Circuit, is that the unknowing use of perjured testimony requires a reversal of defendant's conviction and the grant of a new trial only if the court has a firm belief that, but for the perjury, the defendant most likely would not have been convicted. *United States v. Wallach,* 935 F.2d 445 (2nd Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 2414, 124 L.Ed.2d 637 (1993); *see also Sanders v. Sullivan,* 863 F.2d 218 (2nd Cir.1988). At least two federal circuit courts of appeal have indicated that there is no right to a new trial when a government witness testifies falsely unless the prosecutor either knew or should

have known that the testimony was false. *United States v. Nelson,* 970 F.2d 439 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992). *United States v. Sutherland,* 656 F.2d 1181 (5th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982). In our view, when a government witness testifies falsely under circumstances where the prosecutor neither knew nor should have known that the testimony was false, the appropriate standard for deciding whether to grant a new trial is to treat the subsequent discovery of the false testimony just like any other newly discovered evidence. Thus, the defendant is entitled to a new trial only if he can demonstrate the four requirements set forth in *VanNatta, supra,* 506 N.W.2d at 70.

The first two of those requirements are that the defendant must show the evidence was discovered after trial and that the failure to learn about the evidence at the time of trial was not the result of the defendant's lack of diligence. Although Hunter's guilty plea in Washington was entered after Thiel's trial and therefore could not be discovered by Thiel until after his trial, Thiel knew before his trial about the Washington charges against Hunter. He could have inquired of authorities there whether the charges were being dropped. Information gained by that simple inquiry could have made Thiel aware at trial that Hunter's testimony was false. Thus, Thiel's lack of knowledge was due at least in part to his own lack of diligence.

To get a new trial the *VanNatta, supra,* standard requires the defendant to show that the newly discovered evidence would likely result in an acquittal. The trial court was convinced that the newly discovered evidence about Hunter's false testimony would not, upon retrial, result in an acquittal. Thiel's attorney conducted an extensive cross-examination of Hunter during the trial, which disclosed that Hunter has been diagnosed as a paranoid schizophrenic, that Hunter has numerous prior convictions, including convictions for burglary, forgery, and interstate transportation of forged checks, and that Hunter has operated under numerous assumed names and aliases. Thiel's attorney

also pointedly cross-examined Hunter about the status of the Washington charges against him:

"Q. So you got on the streets here in North Dakota and you go back to Washington. What is the first thing you do? You make threats against a judge and prosecutor. That is an allegation that has yet to be proven?

"A. No, but it's going to be no plea of guilty involved.

"Q. They're going to drop it?

"A. That's right.

"Q. We are supposed to take your word for it that you are not getting any assistance out there because of your testimony here?

"A. Federal authorities don't care.

"Q. How about the federal authorities there? They're just going to drop this threat against a judge and prosecutor for no reason?

"A. Because they don't want to prosecute me.

"Q. Why?

"A. They don't have a valid case as far as I am concerned.

"Q. There has never been a valid case against you, has there been?

"A. There has been.

"Q. You have appealed everything you have ever had?

"A. Yah."

Considering the extensive cross-examination of Hunter, the trial court was convinced that the false statement about a deal to drop the Washington charges would not have made "any impression" upon the jury. Under these circumstances, we believe that it was reasonable for the trial court to conclude that this newly discovered evidence of Hunter's false testimony would not likely result in an acquittal upon retrial. We conclude, therefore, that the trial court did not abuse its discretion in denying Thiel's request for a new trial on the ground that Hunter testified falsely.

In accordance with this opinion, the judgment of conviction and the orders denying Thiel's motions for a new trial are affirmed.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.