Anderson v. A.P.I. Company, 1997 ND 6, 559 N.W.2d 204|N.D. Supreme Court|
Anderson v. A.P.I. Company, 1997 ND 6, 559 N.W.2d 204
[Go to Documents]
Filed Jan. 16, 1997
[Concurrence Filed .]
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
1997 ND 6
Richard C. Anderson, Plaintiff and Appellee
v.
A.P.I. Company of Minnesota, a Minnesota corporation, (also known as A.P.I., Inc.), et al., Defendants
and
Owens-Corning Fiberglas Corp., a Delaware corporation, Defendant and Appellant
Civil No. 950392
Appeal from the District Court for Grand Forks County, Northeast Central Judicial District, the Honorable Bruce E. Bohlman, Judge.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
Opinion of the Court by Neumann, Justice. David C. Thompson (argued), of David C. Thompson, P.C., P.O. Box 5235, Grand Forks, ND 58206-5235, Thomas A. Dickson (on brief), of Dickson Law Office, P.O. Box 1896, Bismarck, ND 58502-1896, and Jeanette T. Boechler (on brief), of Boechler Law Firm, P.O. Box 1932, Fargo, ND 58107-1932, for plaintiff and appellee. Bruce Jones (argued), of Faegre & Benson, 2200 Norwest Center, 90 South Seventh Street, Minneapolis, MN 55402, for defendant and appellant.
Anderson v. A.P.I. Company of Minnesota
Civil No. 950392
Neumann, Justice.
[¶1] Owens-Corning Fiberglas Corporation (Owens-Corning) appeals from a judgment entered on a jury verdict ordering Owens-Corning to pay Richard C. Anderson $85,000 as its share of the damages suffered by Anderson in this asbestos-related personal injury action, and from orders denying Owens-Corning's post-trial motions. We affirm in part, reverse in part, and remand for a reduction in the amount of economic damages awarded to Anderson.
[¶2] From 1959 until 1985, Anderson operated and maintained boilers in the main heating plant at the Minot Air Force Base. During those years, Owens-Corning manufactured an asbestos-containing pipe covering and block insulation under the trade name "Kaylo." Kaylo products were shipped to the main heating plant at the Base while Anderson worked there, and Anderson personally handled, installed, and removed large amounts of pipe covering, cutting it with a saw and inhaling the resulting dust. He also handled, installed, and removed block insulation at the heating plant.
[¶3] In 1991, Anderson was diagnosed with asbestosis, an incurable but non-malignant disease caused by exposure to asbestos. Anderson sued Owens-Corning and other former manufacturers, distributors, and installers of asbestos-containing products, alleging negligence and strict product liability theories of recovery. Owens-Corning was the only defendant appearing at trial. The jury found Anderson had an asbestos-related disease and suffered $340,000 in damages. The jury apportioned 25 percent of the fault to Owens-Corning, and judgment was entered awarding Anderson $85,000, plus interest and costs. The trial court denied Owens-Corning's post-trial motions, and this appeal followed.
I
[¶4] Owens-Corning's primary argument on appeal is the trial court committed reversible error in admitting the testimony of Anderson's "state-of-the-art" expert witness, Dr. Barry I. Castleman.
[¶5] In a pretrial motion in limine, Owens-Corning moved to exclude Castleman's proposed testimony or, in the alternative, to limit the testimony "to an identification of medical and scientific articles upon which he relies and limiting [him] to reciting the text of those articles without offering any opinions or conclusions he may have relative to those articles." Owens-Corning argued the proposed testimony would be beyond the scope of Castleman's qualifications, would be confusing to the jury and more prejudicial than probative, would be inadmissible hearsay, and would lack proper foundation. The trial court denied the motion in limine, but noted it would "expect that [Anderson] will establish a proper foundation at the time of trial for the testimony . . . ."
[¶6] The night before Castleman was to testify, Anderson's counsel informed Owens-Corning Castleman would be unavailable and he intended to instead offer a transcript of Castleman's testimony from a 1991 North Dakota federal district court case against Owens-Corning. The following day, the trial court found Castleman was unavailable to testify in person and, over Owens-Corning's objection, allowed Anderson to use the transcript of his prior testimony. The transcript of Castleman's prior testimony was read to the jury.
[¶7] On appeal, Owens-Corning does not assert the trial court's finding of unavailability is clearly erroneous or the trial court erred in finding Anderson's offer of Castleman's 1991 testimony complied with the hearsay exception in N.D.R.Ev. 804(b)(1). Rather, Owens-Corning asserts Castleman was not qualified as an expert to testify about historical medical articles reflecting the state of the medical community's knowledge of asbestos dangers.
[¶8] It is well established that the qualifications of an expert witness are primarily for the determination of the trial court, and its determination will not be reversed on appeal unless that discretion was abused. Oberlander v. Oberlander, 460 N.W.2d 400, 402 (N.D. 1990). As N.D.R.Ev. 702 explains:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
[¶9] Rule 702 envisions generous allowance of the use of expert testimony if the witnesses are shown to have some degree of expertise in the field in which they are to testify. Matter of Estate of Aune, 478 N.W.2d 561, 564 (N.D. 1991). The rule does not require an expert to have a formal title or be licensed in any particular field, but recognizes it is the witness's actual qualifications that count by providing that an expert can be qualified by knowledge, skill, experience, training, or education. Oberlander; 3 Weinstein's Evidence ¶702[04] (1996). Thus, an expert witness's "knowledge may be derived from reading alone in some fields, from practice alone in some fields, or as is more commonly the case, from both." I McCormick on Evidence §13, at pp. 54-55 (4th ed. 1992) (footnote omitted). While the trial court decides the qualifications of the witness to express an opinion on a given topic, the trier of fact decides the expert witness's credibility and the weight to be given to the testimony. Construction Assoc. v. Fargo Water Equip., 446 N.W.2d 237, 239 (N.D. 1989).
[¶10] Castleman received a bachelor of science degree in chemical engineering from Johns Hopkins University in 1968 and, four years later, obtained a masters degree in environmental engineering from the same university. His masters thesis was titled "Asbestos: Effects on Health." In 1985, Castleman was awarded a doctorate in environmental engineering from Johns Hopkins University School of Hygiene and Public Health. His thesis was titled "Asbestos: An Historical Case Study of Corporate Response to an Industrial Health Hazard." Castleman has authored numerous publications relating to asbestos disease, most notably Asbestos: Medical and Legal Aspects, which has been judicially recognized as a "learned treatise." Nicolet, Inc. v. Nutt, 525 A.2d 146, 148 (Del. 1987). See also Peerman v. Georgia-Pacific Corp., 35 F.3d 284, 285 (7th Cir. 1994); In re North Dakota Personal Injury Asbestos Lit., 737 F.Supp. 1087, 1091 (D.N.D. 1990); ACandS v. Godwin, 340 Md. 334, 667 A.2d 116, 131 (1995). The treatise details the development of knowledge in the medical, scientific, and business communities concerning the hazards of human exposure to asbestos. Castleman has been a consultant for many private organizations and governmental agencies and has testified before United States congressional committees concerning the hazards of asbestos and other substances. He has testified in more than 100 court cases throughout the country. During the course of his research, Castleman has reviewed thousands of publications pertaining to asbestos-related diseases.
[¶11] Anderson offered Castleman's testimony, based on the specialized knowledge he had derived from his education, training, skill, and experience as an occupational health policy consultant and historian, to discuss the historical progression of knowledge concerning the hazards of asbestos within the scientific, medical, technical, and business communities. Castleman's testimony here focused on historical medical knowledge of the hazards of asbestos.
[¶12] Owens-Corning asserts Castleman is "merely a lay librarian of asbestos medical research," and although this might qualify him to testify about the existence of medical articles addressing the relationship between asbestos and certain diseases, it does not qualify him to testify about the contents of the articles because Castleman is not a medical doctor. Claiming Castleman lacks the medical background and experience to evaluate and analyze the articles he reviewed, Owens-Corning asserts his testimony was actually medical opinion he was unqualified to give and, therefore, the testimony could not have been of any assistance to the jury.
[¶13] Owens-Corning relies on several examples of what it considers improper and unqualified medical testimony given by Castleman, including the following excerpts:
"Q. Because of what Dr. Merewether called a maturation period, Doctor, what would happen if you looked at a group of workers exposed to asbestos for disease after only a couple of years of exposure?
"A. You wouldn't find any.
"Q. Why?
"A. Well, if Merewether didn't find it under the totally worst conditions imaginable in the asbestos textile industry, the unregulated asbestos textile industry of the early twentieth century, if he didn't find the workers that were exposed in those conditions had disease until after five years from onset, it's hard to imagine any find of an asbestos industry where one would see asbestosis that soon.
* * * * *
"Q. Of what significance, again, Doctor -- from a Public Health policy viewpoint, of what significance is it, if any, that asbestos causes both asbestosis and lung cancer in terms of the use of a threshold limit value?
"A. Well, the guideline here is intended to limit, if not to prevent, the disease of lung scarring, asbestosis; but the identification of a separate disease process that asbestos also caused, namely the initiation of cancer, throws open the question anew about what level might be considered acceptable or what might approach a safe level from the standpoint of preventing this disease of cancer. It's a very different type of disease process. Cancer reproduces itself, once it starts. It doesn't need a massive amount of asbestos fibers to cause the scars throughout the lungs.
* * * * *
"Q. Now, did the authors of the article put forward some conclusions?
"A. Yes.
"Q. And can you tell us what those conclusions were?
"A. [T]hey concluded, first, that dust control was available for some of the more dusty operations and recommended at various points in the article things like the use of respiratory protection, wet methods and ventilation to reduce the exposure to workers. They also reported that -- they concluded -- after saying that they had found one case of advanced asbestosis and two moderately developed cases based on chest x-rays, they then went on to say that since they had only seen three cases of asbestosis in this workforce of more than a thousand people, that this was not a very dangerous occupation, and that's why we've been talking about it in courts ever since."
[¶14] We believe Owens-Corning's attempt to define medical opinion testimony as including anything Castleman had read or perceived through his asbestos research is overly broad. The jury was aware Castleman was not a medical doctor and had not personally conducted experiments to determine the hazards of asbestos. Castleman did not testify concerning diagnosis of asbestos disease. Rather, Castleman testified about the development of the awareness of the hazards of asbestos in the corporate, scientific and technical communities at the pertinent time. This state-of-the-art testimony obviously derives from a reading of the works of others. As the court pointed out in Steinfurth v. Armstrong World Industries, 27 Ohio Misc.2d 21, 500 N.E.2d 409, 411 (1986):
"Experts have always been permitted to testify regarding information which forms the basis of their opinions. This has never been limited to 'hands-on' experience, but can include review of applicable treatises, formal classes, discussions with colleagues, personal investigations, reading of books of science, and information gained from other experts in the field. These science items are 'perceived' by state-of-the-art witnesses in compliance with Evid.R. 703."
Castleman's perceptions of the articles he reviewed during his asbestos research can hardly be considered medical opinion testimony in the normal sense of the term.
[¶15] We are aware of the reported decisions relied on by Owens-Corning that have excluded or severely restricted Castleman's testimony in other asbestos litigation. But Wilson v. Johns-Manville Sales Corp., 810 F.2d 1358, 1362-1363 (5th Cir.), cert.denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987), was an appellate court decision affirming a district court's discretionary exclusion of Castleman's testimony as a discovery sanction for failing to produce documents in response to a subpoena duces tecum, and In re Related Asbestos Cases, 543 F.Supp. 1142, 1149-1150 (N.D.Cal. 1982), was a trial court decision precluding Castleman from testifying as an expert witness for many of the same reasons asserted by Owens-Corning in this case. What Owens-Corning has not cited, and we have not found, is a reported appellate court decision reversing a trial court's allowance of Castleman's unrestricted expert testimony.
[¶16] Indeed, trial courts in reported decisions have allowed Castleman to testify as an expert without forbidding him from testifying about the contents of medical articles. See, e.g., Johns-Manville Corp. v. United States, 13 Cl.Ct. 72, 147 (1987); Farrall v. A.C. & S. Co., Inc., 558 A.2d 1078, 1081 (Del.Super.Ct. 1989). Most reported appellate court decisions do not reflect that Castleman's testimony was restricted by the trial courts in the manner sought by Owens-Corning in this case. In those decisions, no issue was raised about the scope of Castleman's testimony on appeal, or if it was, the appellate court deemed the issue waived. See, e.g., Ingram v. Acands, Inc., 977 F.2d 1332, 1342 (9th Cir. 1992); Eagle-Picher v. Balbos, 326 Md. 179, 604 A.2d 445, 452 (1992); Bordeaux v. Celotex Corp., 203 Mich.App. 158, 511 N.W.2d 899, 905 (1993); Fibreboard Corp. v. Pool, 813 S.W.2d 658, 692 (Tex.Ct.App. 1991), cert. denied, 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993); Celotex Corp. v. Tate, 797 S.W.2d 197, 202 (Tex.Ct.App. 1990); Davis v. Celotex Corp., 187 W.Va. 566, 420 S.E.2d 557, 560 (1992). In the one reported appellate decision addressing whether the trial court erred in allowing Castleman's testimony about articles he had read and the knowledge of the medical community of asbestos-related hazards, the appeals court found no abuse of discretion in admitting the testimony. See Moran v. G. & W.H. Carson, Inc., 402 Pa.Super. 101, 586 A.2d 416, 428-429 (1991).
[¶17] If there is a thread of consistency in the reported litigation over Castleman's qualifications as a state-of-the-art expert witness and the scope of his testimony, it is found in the broad discretion afforded trial courts in determining the qualifications and usefulness of expert witnesses and the reluctance of appellate courts to interfere with that discretion. Owens-Corning has not persuaded us to interfere with the trial court's discretionary decision in this case.
[¶18] The trial court, in the exercise of its discretion, determined Castleman had sufficient specialized knowledge, skill, experience, training, and education to synthesize his research and knowledge and render an opinion which would assist the jury. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process. Bruner v. Hager, 547 N.W.2d 551, 554 (N.D. 1996). On the record before us, we cannot say the trial court abused its discretion.
[¶19] Owens-Corning also argues Castleman's testimony was inadmissible hearsay under N.D.R.Ev. 801(c) because it revolved around the substance of articles written by others. But once Castleman was found qualified as an expert, N.D.R.Ev. 703 became applicable:
"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."
Thus, "expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions." United States v. Locascio, 6 F.3d 924, 938 (2nd Cir. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1646, 128 L.Ed.2d 365 (1994). Owens-Corning does not argue experts in the field do not reasonably rely on the articles about which Castleman testified. Therefore, the purported inadmissible hearsay nature of the testimony about the articles did not render Castleman's expert opinion testimony inadmissible in this case.
II
[¶20] Owens-Corning asserts it is entitled to a new trial because it was prejudiced by the misconduct of Anderson's trial counsel. Owens-Corning contends Anderson's counsel improperly insinuated and falsely stated during questioning that Anderson had cancer, improperly attempted to present to the jury contents of deposition testimony and Owens-Corning answers to interrogatories from other cases, and made multiple references to supposedly incriminating Owens-Corning answers to interrogatories, then refrained from further questioning "after the damage had been done."
[¶21] The determination to grant or deny a new trial for misconduct of counsel rests almost entirely in the discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. State v. Thiel, 515 N.W.2d 186, 189 (N.D. 1994); Kresel v. Giese, 231 N.W.2d 780, 790 (N.D. 1975). While we agree that counsel, as an officer of the court, must refrain from improper and potentially prejudicial comments during trial, seeAndrews v. O'Hearn, 387 N.W.2d 716, 731 (N.D. 1986), we do not believe counsel's improper remarks and questioning in this case were so prejudicial as to deny Owens-Corning a fair trial.
[¶22] Counsel's isolated comment about Anderson having cancer caused no prejudice. Counsel did not argue to the jury that Anderson had cancer. Indeed, Anderson testified himself he did not have cancer and the jury was made well aware of that fact. The other improper questions were also isolated occurrences when considered in the context of this eight-day trial. Moreover, the trial court instructed the jury to "decide the case based solely on the evidence, which consists of the testimony of the witnesses, the exhibits, and all the facts which may have been stipulated." This court has noted the curative effect of this type of instruction on allegations of prejudicial misconduct of counsel. See Holte v. Carl Albers, Inc., 370 N.W.2d 520, 526-527 (N.D. 1985); Kresel. The trial court was in a superior position to gauge the potential prejudice of counsel's misconduct and its probable effect on the jury in the context of this lengthy trial. We conclude the trial court did not abuse its discretion in denying Owens-Corning's motion for a new trial.
III
[¶23] Owens-Corning asserts the jury's award to Anderson of $25,000 in past economic damages is unsupported by the evidence. Owens-Corning claims the only evidence Anderson presented to the jury about past economic loss consisted of medical bills totaling $17,453.09.
[¶24] In Johnson v. Monsanto Co., 303 N.W.2d 86, 92 (N.D. 1981) (citation omitted), this court said:
"The determination of the amount of damages is in the province of the jury and rests largely in the discretion of the jury. . . . Nevertheless, the jury must determine the compensation to which a party is entitled within reasonable limits, based upon the evidence. If those limits have been exceeded, it is the duty of the court to make a proper reduction or grant a new trial."
[¶25] Anderson has not directed our attention to anything in the record to support an award of past economic damages in excess of $17,453.09. Judges, whether trial or appellate, are not ferrets, obligated to engage in unassisted searches of the record for evidence to support a litigant's position. See Linrud v. Linrud, 552 N.W.2d 342, 345 (N.D. 1996); First Nat. Bank & Trust Co. v. Jacobsen, 431 N.W.2d 284, 288 (N.D. 1988). We deem Anderson's failure to direct our attention to any record evidence to support the jury's award of $25,000 in past economic damages a concession that no such evidence exists. We therefore conclude, as a matter of law, the jury's award of $25,000 in past economic damages must be reduced to $17,453.09, thus reducing the judgment entered on the verdict against Owens-Corning to $83,114.
[¶26] Accordingly, we affirm in part, reverse in part, and remand for an appropriate reduction of the jury's award of past economic damages to Anderson.
[¶27]
William A. Neumann
Mary Muehlen Maring
Herbert L. Meschke
Dale V. Sandstrom
Gerald W. VandeWalle, C.J. VandeWalle, Chief Justice, concurring specially.
[¶28] As the majority opinion notes, Owens-Corning Fiberglass Corporation objected to allowing Richard Anderson to use a transcript of Dr. Barry Castleman's testimony in another case rather then testifying in person because Castleman was unavailable. See Crowston v. Goodyear Tire & Rubber Co., 521 N.W.2d 401 (N.D. 1994) (affirming trial courts exclusion of deposition testimony under N.D.R.Evid. 804(b)(1) because deponents were not unavailable within meaning of N.D.R.Evid. 804(a)(5) merely because they were not residents of North Dakota.) I agree that issue is not raised by Owens-Corning in this appeal.
[¶29]
Gerald W. VandeWalle, C.J.