2015 ND 249

**CITY ·OF JAMESTOWN, Plaintiff
and Appellee**

v.

**Jason Michael HANSON, Defendant
and Appellant.**

No. 20150005.

Supreme Court of North Dakota.

Oct. 13, 2015.

Kara E. Brinster, Assistant City Attorney, Jamestown, ND, for plaintiff and appellee.

Michael R. Hoffman, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1]  A jury found Jason Hanson guilty of driving under the influence of alcohol. He appeals from the criminal judgment and the district court's denial of his motion for a new trial. We affirm the judgment.

I

[¶ 2]  A Jamestown police officer pulled Hanson's vehicle to the side of the road after the officer observed the vehicle make a slow, wide turn and cross the street's center line. The officer asked Hanson to perform field sobriety tests, and Hanson agreed. After Hanson performed the tests, the officer placed him under arrest for driving under the influence of alcohol. The officer then transported Hanson to the Stutsman County Correctional Center. At the correctional center, the officer read Hanson the implied consent advisory and requested Hanson submit to an Intoxilyzer 8000 breath test. Hanson indicated he believed he had no choice in the matter, and he submitted a breath sample. The City then charged Hanson with driving with a blood-alcohol content of at least .08% by volume and driving under the influence.

[¶ 3]  Before trial, Hanson moved to suppress evidence of the Intoxilyzer test on grounds that the implied consent advisory coerced him into consenting. The district court denied his motion. During trial, the City called a forensic scientist employed by the state crime lab. Over Hanson's foundation and hearsay objections, the forensic scientist testified re-

garding the Intoxilyzer 8000 testing procedures. The City then handed the forensic scientist a record of Hanson's Intoxilyzer test and asked her whether she thought it was a valid test. The forensic scientist responded that she could not be sure because she was not present when the test was performed, but if the test record was accurate, she would consider the test valid.

[¶ 4] The City then offered the test record into evidence. Hanson objected claiming the City had laid an insufficient foundation for the test record. Hanson argued the City did not submit documents showing that the methods, devices, or individual who administered the Intoxilyzer test had been approved by the state crime lab director or the director's designee pursuant to the requirements of N.D.C.C. § 39–20–07. The court sustained Hanson's objection, refused to admit the test record, and acquitted Hanson of the driving with a blood-alcohol content of .08% or greater charge. The case was submitted to the jury, and the jury found Hanson guilty of driving under the influence. Hanson subsequently moved for a new trial. The court denied his motion, and he appeals.

## II

[¶ 5] Hanson raises two issues on appeal. He argues the district court erred when it denied his motion to suppress evidence, and the court erred when it allowed the forensic scientist to testify regarding Intoxilyzer 8000 testing methods and the results of Hanson's Intoxilyzer test.

[¶ 6] "A district court's denial of a motion for a new trial is reviewed under the abuse-of-discretion standard." *Estate of Gassmann*, 2015 ND 188, ¶ 23, 867 N.W.2d 325 (citing *Rittenour v. Gibson*, 2003 ND 14, ¶ 13, 656 N.W.2d 691). A district court's admission of evidence is also reviewed for an abuse of discretion. *S.L.W. v. Huss*, 2014 ND 169, ¶ 8, 852 N.W.2d 367. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

## III

[¶ 7] Hanson argues the district court erred when it denied his motion to suppress evidence regarding the Intoxilyzer 8000 test because the officer's reading of the implied consent advisory coerced him into submitting to the test. "This Court has previously determined, in the context of post-arrest chemical tests, that the state's implied consent statute, which criminalizes refusal, is not coercive merely by the reading of the advisory." *State v. Nagel*, 2014 ND 224, ¶ 12, 857 N.W.2d 374. *See also State v. Beylund*, 2015 ND 27, ¶ 1, 861 N.W.2d 172; *State v. Smith*, 2014 ND 152, ¶ 21, 849 N.W.2d 599; *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 24, 848 N.W.2d 659. Because an officer's reading of the advisory does not, by itself, constitute coercion, and Hanson has not presented any evidence indicating his consent was otherwise coerced, we find the district court's denial of Hanson's motion to suppress was not in error.

## IV

[¶ 8] Hanson asserts the district court erred when it allowed the state crime lab's forensic scientist to testify regarding the Intoxilyzer 8000 test. In support of his assertion, he offers two arguments: (1) the court erred when it allowed the forensic scientist to testify regarding the test and its validity because the prosecution did not fulfill the requirements of N.D.C.C. § 39–20–07(5), and (2) the court erred when it

allowed the forensic scientist to testify from the Intoxilyzer test record because the record was not admitted into evidence.

## A

■ [¶ 9] Hanson argues that admission of the forensic scientist's testimony was in error because the City did not meet the requirements of N.D.C.C. § 39–20–07(5). "The admission of blood alcohol test results into evidence is governed by N.D.C.C. § 39–20–07." *Painte v. Dir., Dep't of Transp.*, 2013 ND 95, ¶ 19, 832 N.W.2d 319 (citing *Schlosser v. North Dakota Dep't of Transp.*, 2009 ND 173, ¶ 9, 775 N.W.2d 695). The statute provides:

The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee.

N.D.C.C. § 39–20–07(5). "To use this 'shortcut' provided in N.D.C.C. § 39–20–07, the documents and testimony must demonstrate 'scrupulous compliance' with the methods approved by the director of the state crime laboratory or the director's designee." *Painte*, at ¶ 20. When scrupulous compliance cannot be shown, expert testimony must be introduced to establish the test was administered fairly. *Id.*

[¶ 10] Hanson argues "[t]he City never put in evidence documents to show the requirements of N.D.C.C. § 39–20–07(5)." In support of his argument, he cites *Frank v. Dir., N.D. Dep't of Transp.*, 2014 ND 158, 849 N.W.2d 248. In *Frank*, this Court held an administrative hearing offi-

cer erred when he admitted Intoxilyzer test results because a proper foundation for the results was not laid. *Id.* at ¶ 1. Hanson relies on the same argument put forth in *Frank:* the requirements of N.D.C.C. § 39–20–07 were not met because the prosecution failed to show that the director of the state crime laboratory or the director's designee approved the testing methods, device, and test operator. However, Hanson's reliance on *Frank* is misguided. In *Frank*, we were faced with the question of whether it was error to admit Intoxilyzer test *results* when the requirements of N.D.C.C. § 39–20–07 were not met. In the present case, the question is whether the district court erred when it allowed testimony concerning Intoxilyzer test procedures and the validity of Hanson's test.

[¶ 11] Section 39–20–07, N.D.C.C., does not mandate all of its requirements must be met before any testimony concerning a chemical blood test can be admitted. Rather, it sets forth a procedure that provides the prosecution a "shortcut" for offering chemical test results into evidence when the prosecution can demonstrate "scrupulous compliance" with the state crime laboratory's methods. *Painte*, 2013 ND 95, ¶ 20, 832 N.W.2d 319. The language of the statute states: "The *results* of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered . . . ." N.D.C.C. § 39–20–07(5) (emphasis added). Here, the fact that the district court ruled the prosecution did not lay the proper foundation required by the statute does not amount to error based on other testimony from an expert relating to Intoxilyzer testing; the test results were never admitted into evidence, and the jury never heard them.

**B**

[¶ 12] Hanson also argues the district court erred when it allowed the forensic scientist to testify from the Intoxilyzer test record because the record was not admitted into evidence. The City argues that the forensic scientist's testimony was admissible because the scientist qualified as an expert, and experts may base their testimony on inadmissible facts or data.

[¶ 13] Under N.D.R.Ev. 702, a witness who qualifies as an expert is allowed to give opinion testimony if it will assist the trier of fact:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

"It is well established that the qualifications of an expert witness are primarily for the determination of the trial court, and its determination will not be reversed on appeal unless that discretion was abused." *Anderson v. A.P.I. Co.*, 1997 ND 6, ¶ 8, 559 N.W.2d 204. "Rule 702 envisions generous allowance of the use of expert testimony if the witnesses are shown to have some degree of expertise in the field in which they are to testify. The rule does not require an expert to have a formal title or be licensed in any particular field, but recognizes it is the witness's actual qualifications that count by providing that an expert can be qualified by knowledge, skill, experience, training, or education." *Id.* at ¶ 9.

[¶ 14] If a witness qualifies as an expert witness, the expert can base his or her opinion testimony on inadmissible evidence if such evidence is ordinarily relied upon by experts in the field. *Interest of*

*J.M.*, 2013 ND 11, ¶ 12, 826 N.W.2d 315. North Dakota Rule of Evidence 703 states:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

[¶ 15] Here, the forensic scientist's qualifications and experience were sufficient to provide her with specialized knowledge regarding Intoxilyzer 8000 administration. At trial, the forensic scientist testified: (1) her job title was "forensic scientist II," (2) she had bachelors degrees in criminal justice and biology, and (3) as a part of her job duties, she administers a class that provides individuals with certification to administer the Intoxilyzer 8000 breath test. We have stated witnesses qualify as experts when they "are shown to have some degree of expertise in the field in which they are to testify." *Anderson*, 1997 ND 6, ¶ 9, 559 N.W.2d 204. The witness here had specialized training on how to administer the Intoxilyzer test, and she taught an Intoxilyzer certification course. Her testimony was limited to Intoxilyzer 8000 test administration and the validity of Hanson's Intoxilyzer 8000 test. Thus, we conclude the district court did not err when it allowed the forensic scientist to testify as an expert.

[¶ 16] Hanson argues that, even if the forensic scientist qualified as an expert, her testimony should not have been admitted because it was unduly prejudicial. Hanson was acquitted of driving

with a blood-alcohol content of .08% or greater. Yet, the jury heard the forensic scientist testify regarding the procedure and validity of the Intoxilyzer test conducted on Hanson. Thus, Hanson asserts, the scientist's testimony was not relevant to the charge he was convicted of—driving under the influence of alcohol—and it caused him undue prejudice.

[¶17] Under N.D.R.Ev.702, "[a] witness who is qualified as an expert ... may testify ... if the expert's ... specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." And, under N.D.R.Ev. 703, if the facts or data the expert bases his or her opinion on are inadmissible, the expert "may disclose them to the jury *only if* their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." (Emphasis added).

[¶18] Here, the forensic scientist's expert testimony was not prejudicial, and the district court did not abuse its discretion. First, the forensic scientist's testimony regarding the Intoxilyzer procedures and test results was given before the district court acquitted Hanson of the .08% or greater charge. Therefore, it cannot be said the court acted in an arbitrary or unreasonable manner when it allowed the testimony because, when the testimony was heard, it was still relevant to the charges Hanson was then facing. Evidence is relevant if it is probative of a fact that is of consequence in determining a case. N.D.R.Ev. 401. Testimony concerning the Intoxilyzer test procedures and the test's validity was probative as to whether Hanson's blood-alcohol content was greater than .08%. Thus, at the time it was given, the expert's testimony concerning the Intoxilyzer test was relevant. Second, the testimony was not unduly prejudicial because, when the forensic scientist gave

it, she explicitly stated she was not present during Hanson's test and could not verify that the correct procedures were, in fact, followed:

Q. When you're looking at a test record, can you tell if the method you just described was followed?

A. I can tell a large percent if the officer was being honest.... I can only see it on the record. I wasn't there. I don't exactly know if they really followed it.

. . . .

Q. ... Can you tell by looking at this test if it was a very old test?

. . . .

A. This is a very old test. If the operator did in fact follow the 20-minute wait and use clean mouth pieces.

Therefore, given the order in which evidence was presented at trial and the caveats given by the forensic scientist regarding her absence during the test, we conclude the district court did not abuse its discretion.

V

[¶19] We conclude the district court did not err when it denied Hanson's motion for a new trial, and we affirm the judgment.

[¶20] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS and DALE V. SANDSTROM, JJ., concur.

DANIEL J. CROTHERS, J., concurs in the result.