2013 ND 95

**Debbie Ann PAINTE, Appellee**

v.

**DIRECTOR, DEP'T OF TRANSPORTATION,**
Appellant.

No. 20120316.

Supreme Court of North Dakota.

June 19, 2013.

Thomas M. Tuntland, Mandan, ND, for appellee.

Douglas B. Anderson, Assistant Attorney General, Bismarck, ND, for appellant.

CROTHERS, Justice.

[¶ 1] The North Dakota Department of Transportation appealed from a judgment reversing a hearing officer's decision suspending Debbie Ann Painte's driving privileges for 180 days. We conclude the district court erred in deciding the hearing officer made insufficient findings of fact and conclusions of law to establish the police officer had reasonable grounds to believe Painte was in actual physical control of a vehicle. We also conclude the Department laid a proper foundation for the admission of Painte's chemical test for intoxication. Therefore, we reverse the district court's judgment and reinstate the hearing officer's decision suspending Painte's driving privileges.

I

[¶ 2] In March 2012, a Mandan police officer arrested Painte for the offense of being in actual physical control of a vehicle while under the influence of intoxicating liquor. At approximately 2:49 a.m., on March 8, 2012, the officer responded to a property owner's report that a vehicle was parked in her parking area for quite a while and that the vehicle was running with somebody inside of it. After arriving at the location, the officer observed a parked vehicle with the engine running and a female inside.

[¶ 3] The police officer testified at the administrative hearing that the occupant, later identified as Painte, was not conscious and was slumped over in the seat with her eyes closed. The officer knocked on the window to get Painte's attention. The officer observed a pool of vomit on the ground outside the vehicle and Painte was bleeding on her nose. The officer also detected the odor of alcohol. The officer testified Painte was very difficult to understand, was having a hard time following instructions and had very red and blood-shot eyes.

[¶ 4] The officer testified Painte appeared to be intoxicated and got out of the vehicle to perform field sobriety tests. Painte failed the horizontal gaze nystagmus test and was unable to complete the walk and turn test and the S–D5 on-site screening test. The officer arrested

Painte for being in actual physical control of a vehicle and transported her to Morton County jail for a blood draw. The results of the blood test established Painte had a blood alcohol concentration of .217 percent by weight.

[¶ 5] Painte requested an administrative hearing. After the hearing, the hearing officer issued findings of fact, conclusions of law and a decision suspending Painte's driving privileges for 180 days. Painte appealed to the district court, arguing the hearing officer erred in concluding the chemical test was fairly administered and in concluding probable cause existed to arrest her for actual physical control of a motor vehicle. The district court reversed the hearing officer's decision and reinstated Painte's driving privileges.

## II

[¶ 6] Our review of an administrative agency decision to suspend a person's driving privileges is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Berger v. North Dakota Dep't of Transp.*, 2011 ND 55, ¶ 5, 795 N.W.2d 707. On appeal from the district court, we review the agency's decision. *Berger*, at ¶ 5; *Masset v. Dir., North Dakota Dep't of Transp.*, 2010 ND 211, ¶ 6, 790 N.W.2d 481. "Courts exercise limited review in appeals from administrative agency decisions, and the agency's decision is accorded great deference." *Berger*, at ¶ 5. We review an administrative agency decision under N.D.C.C. § 28–32–49 in the same manner as the district court under N.D.C.C. § 28–32–46. *Berger*, at ¶ 5. We must affirm the agency's decision unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46.

[¶ 7] "In deciding whether an agency's findings of fact are supported by a preponderance of the evidence, our review is confined to the record before the agency and to determining 'whether a reasoning mind reasonably could have determined the factual conclusions were proven by the weight of the evidence.'" *Hawes v. N.D. Dep't of Transp.*, 2007 ND 177, ¶ 14, 741 N.W.2d 202 (quoting *Kraft v. N.D. State Bd. of Nursing*, 2001 ND 131, ¶ 10, 631 N.W.2d 572). "We defer to the agency's ruling by not making independent findings of fact or by substituting our own judgment for the agency's, but 'the ultimate conclusion of whether the facts meet the legal standard, rising to the level of probable cause, is a question of law, fully reviewable on appeal.'" *Hawes*, at ¶ 14 (quoting *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161).

## III

■ [¶ 8] The Department argues the hearing officer's findings of fact support the conclusion of law that the police officer had reasonable grounds to believe Painte was in actual physical control of the vehicle in violation of N.D.C.C. § 39–08–01.

■ [¶ 9] Under N.D.C.C. § 39–08–01(1)(a), a person is prohibited from being "in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if . . . [t]hat person has an alcohol concentration of at least eight one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after . . . being in actual physical control of a vehicle." "The essential elements of actual physical control are: (1) the defendant is in actual physical control of a motor vehicle on a highway or upon public or private areas to which the public has a right of access; and (2) the defendant was under the influence of intoxicating liquor, drugs or other substances." *Hawes*, 2007 ND 177, ¶ 5, 741 N.W.2d 202.

■ [¶ 10] "The primary factor in evaluating actual physical control is whether the accused had the ability to manipulate the controls of the vehicle." *Vanlishout v. North Dakota Dep't of Transp.*, 2011 ND 138, ¶ 16, 799 N.W.2d 397 (citing *Rist v. North Dakota Dep't of Transp.*, 2003 ND 113, ¶ 14, 665 N.W.2d 45).

"Our case law reflects that 'actual physical control' does not mean the defendant can drive the car at the instant the officer sees him. Instead, the ability to control and operate the vehicle is subject to broader interpretation, and this is a question of fact properly left to the agency to decide. *See Salvaggio v. North Dakota Dep't of Transp.*, 477 N.W.2d 195, 198 (N.D.1991). We have upheld numerous convictions in which the defendant was not able to instantaneously operate the vehicle, but was still deemed to have had actual physical control because the temporary impediment could have been removed and the defendant could again have attempted to drive. *See, e.g., Hawes*, 2007 ND 177, 741 N.W.2d 202 (defendant's car out of fuel); *City of Fargo v. Novotny*, 1997 ND 73, 562 N.W.2d 95 (defendant asleep in vehicle with engine not running); *Salvaggio*, 477 N.W.2d 195 (N.D.1991) (defendant outside of stuck vehicle attempting to place chains on tire); *City of Fargo v. Theusch*, 462 N.W.2d 162 (N.D. 1990) (defendant asleep in vehicle with ignition key in his coat pocket); *State v. Ghylin*, 250 N.W.2d 252 (N.D.1977) (defendant outside of vehicle stuck in the ditch)."

*Vanlishout*, 2011 ND 138, ¶ 17, 799 N.W.2d 397.

[¶ 11] In reversing the hearing officer's decision, the district court recognized the broad view of what constitutes "actual physical control" and there was evidence in the record from which the hearing officer could reasonably have found Painte was able to "manipulate the controls" of the vehicle. However, the district court reversed the hearing officer's decision because no specific finding of fact or conclusion of law established that Painte was able to "manipulate the [vehicle's] controls" and the hearing officer failed to articulate "any other nexus between her findings of fact and her conclusions of law" or "to clearly explain how the findings of fact lead to the conclusions of law."

[¶ 12] Although the hearing officer did not specifically find Painte had the "ability to manipulate" the vehicle's controls, the Department argues the findings are stated with sufficient specificity to understand the hearing officer's decision. The Depart-

ment asserts Painte's ability to control and operate the vehicle may be reasonably inferred from the underlying evidentiary facts without the need to express "terms of art." The Department contends a finding of the ultimate fact Painte had the ability to control and operate her vehicle also may be implied from the hearing officer's conclusion that the officer had reasonable grounds to believe Painte was in actual physical control of the vehicle in violation of N.D.C.C. § 39–08–01.

[¶ 13] Despite Painte's assertion no evidence proved she was exercising "real control" over the vehicle or was in a position to manipulate the vehicle's controls, the hearing officer concluded the police officer had reasonable grounds to believe Painte was in actual physical control. In reaching this conclusion, the hearing officer found:

> "Mandan Police Officer April Jose was called to check on a parked vehicle with its engine running and a female slumped over in the vehicle. Officer Jose arrived, saw the parked vehicle with its engine running and with a female slumped over, eyes closed. She knocked on the window and the driver, Debbie Painte, awoke."

[¶ 14] We ordinarily will not remand to clarify findings of fact when we are "able to discern" the rationale of the fact-finder "through inference or deduction." *In re T.J.K.*, 1999 ND 152, ¶ 15, 598 N.W.2d 781 (citing *Schmitz v. Schmitz*, 1998 ND 203, ¶ 6, 586 N.W.2d 490; *Alvarez v. Carlson*, 524 N.W.2d 584, 591 (N.D.1994)). "We may imply the necessary findings of fact if, after reviewing the record, we are able to clearly understand the judicial referee's factual determinations." *In re T.J.K.*, at ¶ 15.

[¶ 15] Based on review of the record, evidence exists from which the hearing officer could reasonably conclude Painte was able to manipulate the vehicle's controls. The police officer testified that she observed the parked vehicle was running and Painte was slumped over in the seat with her eyes closed and that the officer had to knock on the window to get Painte to open her eyes. Based on the findings, we are able to discern the hearing officer's rationale in reaching the conclusion the police officer had reasonable grounds to believe Painte was in actual physical control of the vehicle in violation of N.D.C.C. § 39–08–01. We conclude a reasoning mind reasonably could have determined that the hearing officer's factual conclusions were proven by the weight of the evidence and that the findings of fact support the hearing officer's conclusion Painte was in actual physical control of the vehicle. We therefore conclude the district court erred in deciding the evidence was insufficient to support the hearing officer's decision.

[¶ 16] Although we conclude the district court erred in deciding this issue, we also must consider whether the Department laid sufficient foundation for admission of the results of Painte's blood test.

## IV

[¶ 17] Painte argued before the hearing officer and on appeal to the district court that a proper foundation for introduction of the analytical report was not laid because no evidence was presented that forensic scientist Roberta Grieger–Nimmo was, in fact, the state crime laboratory director's designee for purposes of the statutory functions provided in N.D.C.C. § 39–20–07. The Department argues it laid the proper foundation for the admission of Painte's chemical test for intoxication at the administrative hearing. The district court did not reach the argument.

[¶ 18] Regarding the administrative hearing, N.D.C.C. § 39–20–05(2) in part states: ·

"The hearing must be recorded and its scope may cover only the issues of whether the arresting officer had reasonable grounds to believe the individual had been driving or was in actual physical control of a vehicle in violation of section 39–08–01 or equivalent ordinance . . .; whether the individual was placed under arrest . . .; whether the individual was tested in accordance with section 39–20–01 or 39–20–03 and, if applicable, section 39–20–02; and whether the test results show the individual had an alcohol concentration of at least eight one-hundredths of one percent by weight. . . . *For purposes of this section, a copy of a certified copy of an analytical report of a blood or urine sample from the director of the state crime laboratory or the director's designee* or a certified copy of the checklist and test records from a certified breath test operator *establish prima facie the alcohol concentration* or the presence of drugs, or a combination thereof, *shown therein.* Whether the individual was informed that the privilege to drive might be suspended based on the results of the test is not an issue."

(Emphasis added.)

[¶ 19] The admission of blood alcohol test results into evidence is governed by N.D.C.C. § 39–20–07. *See Schlosser v. North Dakota Dep't of Transp.*, 2009 ND 173, ¶ 9, 775 N.W.2d 695; *State v. Jordheim*, 508 N.W.2d 878, 881 (N.D.1993). "[Section 39–20–07] purposely eases the burden of the prosecution in laying an evidentiary foundation for a blood-alcohol report." *Jordheim*, at 881 (citing *State v. Schwalk*, 430 N.W.2d 317, 322 (N.D.1988)). Specifically, N.D.C.C. § 39–20–07 provides in relevant part:

"Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any individual while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, drugs, or a combination thereof, evidence of the amount of alcohol concentration or presence of other drugs, or a combination thereof, in the individual's blood, breath, or urine at the time of the act alleged as shown by a chemical analysis of the blood, breath, or urine is admissible. For the purpose of this section:

. . . .

5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved *by the director of the state crime laboratory or the director's designee,* and by an individual possessing a certificate of qualification to administer the test issued *by the director of the state crime laboratory or the director's designee.* The director of the state crime laboratory or the director's designee is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the individual requested to take the chemical test.

6. *The director of the state crime laboratory or the director's designee* may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation,

and the inspectors shall report the findings of any inspection to the *director of the state crime laboratory or the director's designee* for appropriate action. Upon approval of the methods or devices, or both, required to perform the tests and the individuals qualified to administer them, *the director of the state crime laboratory or the director's designee* shall prepare, certify, and electronically post a written record of the approval with the state crime laboratory division of the attorney general at the attorney general website, and shall include in the record:

a. An annual register of the specific testing devices currently approved, including serial number, location, and the date and results of last inspection.

b. An annual register of currently qualified and certified operators of the devices, stating the date of certification and its expiration.

c. The operational checklist and forms prescribing the methods currently approved by the director of the state crime laboratory or the director's designee in using the devices during the administration of the tests.

d. The certified records electronically posted under this section may be supplemented when the director of the state crime laboratory or the director's designee determines it to be necessary, and any certified supplemental records have the same force and effect as the records that are supplemented.

e. The state crime laboratory shall make the certified records required by this section available for download in a printable format on the attorney general website.

7. Copies of the state crime laboratory certified records referred to in subsections 5 and 6 that have been electronically posted with the state crime laboratory division of the attorney general at the attorney general website must be admitted as prima facie evidence of the matters stated in the records.

8. A certified copy of the analytical report of a blood or urine analysis referred to in subsection 5 and which is issued by *the director of the state crime laboratory or the director's designee* must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter. The certified copy satisfies the directives of subsection 5."

N.D.C.C. § 39–20–07 (emphasis added).

[¶ 20] To use this "shortcut" provided in N.D.C.C. § 39–20–07, the documents and testimony must demonstrate "scrupulous compliance" with the methods approved by the director of the state crime laboratory or the director's designee. *See Schlosser*, 2009 ND 173, ¶ 10, 775 N.W.2d 695 (quoting *Jordheim*, 508 N.W.2d at 882). When scrupulous compliance with the approved methods is not shown, the Department must introduce expert testimony to establish fair administration of the test. *Schlosser*, at ¶ 10; *Jordheim*, at 882; *Schwalk*, 430 N.W.2d at 324; *State v. Nygaard*, 426 N.W.2d 547, 549 (N.D.1988).

[¶ 21] The issue here is whether sufficient foundation exists for admission of the results of Painte's chemical test for intoxication. As stated above, N.D.C.C. § 39–20–07(8) provides that a "certified copy" of the analytical report of the blood analysis referred to in N.D.C.C. § 39–20–07(5) and "which is issued by the director of the

state crime laboratory or the director's designee" must be accepted as prima facie evidence of the results of the analysis. In this case, the certification of the analytical report was not executed by the state crime laboratory director, but by forensic scientist Roberta Grieger–Nimmo, as "designee of the Director of the State Crime Laboratory." The gist of Painte's argument is that Grieger–Nimmo's certification is insufficient because it is a "self-serving hearsay declaration" and because N.D.C.C. § 39–20–07 does not permit such self-designation.

[¶ 22] The Department contends proper foundation was laid because Grieger–Nimmo identified herself on the certification for the "Submission for Blood (104) and Toxicology Alcohol/Volatiles Analytical Report" as a "designee of the Director of the State Crime Laboratory," Grieger–Nimmo is identified on the "List of Individuals Certified to Conduct Blood Alcohol Analysis (August 17, 2011)" as being certified to conduct the blood alcohol analysis, and Painte failed to introduce any evidence disputing Grieger–Nimmo's certification that she was the director's designee.

[¶ 23] The hearing officer received into evidence Exhibit 1c over Painte's hearsay objection. That exhibit is Grieger–Nimmo's affidavit, stating in pertinent part:

"I, Roberta Grieger–Nimmo, *designee of the Director of the State Crime Laboratory,* a division of the Office of the North Dakota Attorney General, certify that I am a Forensic Scientist I and that I have carefully compared the Submission for Blood (104) and Toxicology Alcohol/Volatiles Analytical Report for:

XXXXX–XXXXX PAINTE, DEBBIE ANN

and which are attached here, with the original Submission for Blood (104) and Toxicology Alcohol/Volatiles Analytical Report as the same appears on electronic file at the Crime Laboratory Division

of the Office of the North Dakota Attorney General. . . ."

(Emphasis added.)

[¶ 24] Under North Dakota law, an affidavit is defined as "a written declaration under oath made without notice to the adverse party." N.D.C.C. § 31–04–02. Grieger–Nimmo's document is an affidavit and a certification called for in N.D.C.C. § 39–20–07(5). As an affidavit, Grieger–Nimmo's statements constitute testimony of a witness. N.D.C.C. § 31–04–01.

[¶ 25] The record here establishes through Grieger–Nimmo's affidavit that she is the director's designee. That foundational evidence, even though provided by the designee herself, is both sufficient for establishing prima facie evidence of her status and not contrary to statute. *See* N.D.C.C. § 39–20–07. Upon this proof, the burden shifts to the driver to disprove Grieger–Nimmo's status as the director's designee. No such counter evidence exists. The hearing officer therefore did not err admitting the laboratory results of Painte's chemical test for intoxication.

### V

[¶ 26] The district court's judgment is reversed and the hearing officer's decision suspending Painte's driving privileges is reinstated.

[¶ 27] MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 28] I concur in Parts I through III of the majority opinion. I respectfully dissent to Parts IV and V of that opinion.

[¶ 29] There is no affidavit or evidence in the record affirmatively establishing that the state crime laboratory director has designated Grieger–Nimmo as the "director's designee" for purposes of N.D.C.C. § 39–20–07. The closest inde-

pendent verification of Grieger–Nimmo's status as a "director's designee" may, in fact, be the notary public's attestation to Grieger–Nimmo's signature on the certification itself. Nonetheless, while the director of the state crime laboratory would be readily identifiable as an individual holding that position, the "director's designees" are not as easily identified. Further, although the Department requests this Court to take judicial notice of a listing of the director's designees posted on the attorney general's website, N.D.C.C. § 39–20–07(7) only permits that the certified records referred to in N.D.C.C. § 39–20–07(5) and (6) "must be admitted as prima facie evidence of the matters stated in the records." Thus, the plain language of N.D.C.C. § 39–20–07(7), rather than supporting the taking of judicial notice, requires the certified records actually be offered into evidence at the administrative hearing to be admitted as prima facie evidence. Because such a listing of the director's designees is provided on the attorney general's website, it would seemingly have been a simple matter to obtain the listing and admit it into evidence. *Cf. State v. Sivesind*, 439 N.W.2d 530, 534 (N.D.1989) (VandeWalle, J., concurring specially).

[¶ 30] Based on the foregoing, I believe the Department failed to lay proper foundation for admission of the blood test into evidence at the administrative hearing. I would conclude the district court did not err in reversing the hearing officer's decision, albeit for a different reason, and I would affirm the judgment on grounds other than those relied upon by the district court.

[¶ 31] GERALD W. VANDE WALLE, C.J.