2014 ND 158

**Adam Paul FRANK, Appellant**

v.

**DIRECTOR, NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Appellee.**

No. 20140082.

Supreme Court of North Dakota.

July 17, 2014.

Michael R. Hoffman, Bismarck, ND, for appellant.

Michael T. Pitcher, Office of Attorney General, Bismarck, ND, for appellee.

KAPSNER, Justice.

[¶ 1] Adam Paul Frank appeals from a district court judgment affirming a Department of Transportation hearing officer's decision suspending Frank's driving privileges for driving under the influence of alcohol. We conclude proper foundation for the Intoxilyzer test results was not laid, and the administrative hearing officer erred in admitting the Intoxilyzer test re-

sults. We reverse the district court judgment.

## I

[¶ 2] On July 12, 2013, a Burleigh County deputy clocked a vehicle traveling 46 miles-per-hour in a 35 mile-per-hour zone and stopped the vehicle for speeding. The deputy noted the driver, Frank, had an odor of alcoholic beverages on his breath and had bloodshot, glossy eyes. The deputy requested Frank perform field sobriety tests. Frank failed or had unsatisfactory results on the horizontal gaze nystagmus test, the walk-and-turn test, the one-leg stand test, and the Alco–Sensor FST on-site screening test. Frank was arrested for DUI and consented to breath testing. Intoxilyzer testing was done, and the results indicated Frank had an alcohol concentration of .12% within two hours of driving.

[¶ 3] Frank requested an administrative hearing. At the hearing, Frank objected to the admission of the Intoxilyzer test results, arguing it had not been shown that the methods, devices, or the individual who had administered the test had been approved by the director of the state crime laboratory or the director's designee. The hearing officer overruled Frank's objection. After the hearing, the hearing officer suspended Frank's driving privileges for 91 days, and Frank appealed. On appeal, the district court affirmed the hearing officer's decision. Frank appeals the district court judgment.

## II

[¶ 4] In an appeal of a district court's review of an administrative agency's decision, this Court reviews the administrative agency's decision. *Steinmeyer v. Dep't of Transp.*, 2009 ND 126, ¶ 8, 768 N.W.2d 491.

This Court's review of an administrative decision to suspend a driver's license is governed by the Administrative Agencies Practice Act. The review is limited to the record before the administrative agency. We review the administrative hearing officer's decision and give deference to the administrative hearing officer's findings. We do not, however, make independent findings or substitute our judgment for that of the agency. Rather, we determine only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record.

*Pesanti v. N.D. Dep't of Transp.*, 2013 ND 210, ¶ 7, 839 N.W.2d 851 (citations and internal quotation marks omitted). "This Court reviews questions of law de novo and gives deference to the Department's sound findings of fact." *Steinmeyer*, at ¶ 8 (citations omitted). We must affirm an administrative hearing officer's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46; *see Pesanti,* at ¶ 7.

### III

[¶ 5] Frank argues the requirements of N.D.C.C. § 39–20–07(5) were not met and the hearing officer erred in admitting the Intoxilyzer test results over his objection, because it was not shown that the director of the state crime laboratory or the director's designee approved the device used or the individual who administered Frank's breath test. "The Department's authority to suspend a person's license is given by statute and is dependent upon the terms of the statute." *Aamodt v. N.D. Dep't of Transp.,* 2004 ND 134, ¶ 15, 682 N.W.2d 308. Under the controlling statute at the time of Frank's arrest:

Upon the trial of any civil ... action or proceeding arising out of acts alleged to have been committed by any individual while driving ... a motor vehicle while under the influence of intoxicating liquor, ... evidence of the amount of alcohol concentration ... in the individual's blood, breath, or urine at the time of the act alleged as shown by a chemical analysis of the blood, breath, or urine is admissible. For the purpose of this section:

. . . .

5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee. The director of the state crime laboratory or the director's designee is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the individual requested to take the chemical test.

6. The director of the state crime laboratory or the director's designee may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the director of the state crime laboratory or the director's designee for appropriate action. Upon approval of the methods or devices, or both, required to perform the tests and the individuals qualified to administer them, the director of the state crime laboratory or the director's designee shall prepare, certify, and electronically post a written record of the approval with the state crime laboratory division of the attorney general at the attorney general website, and shall include in the record:

a. An annual register of the specific testing devices currently approved, including serial number, location, and the date and results of last inspection.

b. An annual register of currently qualified and certified operators of the devices, stating the date of certification and its expiration.

c. The operational checklist and forms prescribing the methods cur-

rently approved by the director of the state crime laboratory or the director's designee in using the devices during the administration of the tests.

d. The certificate of the director of the state crime laboratory designating the director's designees.

e. The certified records electronically posted under this section may be supplemented when the director of the state crime laboratory or the director's designee determines it to be necessary, and any certified supplemental records have the same force and effect as the records that are supplemented.

f. The state crime laboratory shall make the certified records required by this section available for download in a printable format on the attorney general website.

7. Copies of the state crime laboratory certified records referred to in subsections 5 and 6 that have been electronically posted with the state crime laboratory division of the attorney general at the attorney general website must be admitted as prima facie evidence of the matters stated in the records.

8. A certified copy of the analytical report of a blood or urine analysis referred to in subsection 5 and which is issued by the director of the state crime laboratory or the director's designee must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter. The certified copy satisfies the directives of subsection 5.

N.D.C.C. § 39–20–07.

[¶ 6] In this case, Deputy Danny Lemieux, who performed Frank's Intoxilyzer test, testified at the administrative hearing that he was a certified chemical test operator. A list of certified chemical test operators was also admitted into evidence, and this list indicated Lemieux was certified "pursuant to sections 20.1–13.1, 20.1–15, 39–06.2, 39–20, and/or 39–24.1 of the North Dakota Century Code." A list of approved chemical testing devices was also entered into evidence, and this list included the Intoxilyzer 8000 used to administer Frank's test. The list of chemical test operators and the list of approved chemical testing devices were certified by Charles E. Eder, the state toxicologist. However, there is no evidence on the record that Eder is a designee of the director of the state crime laboratory.

[¶ 7] Frank argues that, without evidence that Eder is the director's designee, the Department's foundation for Frank's test results is incomplete. In support of his argument, Frank points to *Painte v. Dir., Dep't of Transp.*, 2013 ND 95, ¶¶ 17–25, 832 N.W.2d 319, which also involved a foundational challenge to the introduction of an analytical report. In that case, a certified copy of the analytical report was offered in accordance with N.D.C.C. § 39–20–07(8), and we held that evidence on the record must show that the individual issuing that report was "director of the state crime laboratory or the director's designee." *Id.* at ¶¶ 21, 25. We determined that the individual's own sworn statement that she was "designee of the Director of the State Crime Laboratory" was enough to meet this burden. *Id.* at ¶¶ 23, 25.

[¶ 8] The Department argues this Court has implicitly recognized the state toxicologist as designee of the director in other cases. In support of this argument, the Department points to language referring to "the State Toxicologist's approved method." *See, e.g., Buchholtz v. Dir., N.D. Dep't of Transp.*, 2008 ND 53, ¶ 11, 746 N.W.2d 181. However, these cases all relied on precedent which developed based

on an older version of N.D.C.C. § 39–20–07. Under the prior version of the statute, the methods, devices, and individual administering the analytical test must have been approved by "the state toxicologist." *See* N.D.C.C. § 39–20–07 (2003). The statute was amended in 2005, replacing all references to "the state toxicologist" with "the director of the state crime laboratory or the director's designee." The language of our caselaw, however, did not always accurately reflect that statutory change. *See, e.g., Buchholtz,* at ¶ 11.

[¶ 9] Frank now raises a challenge which directly calls our precedent into question. We recognize the state toxicologist no longer holds statutory authority to approve the methods, devices, and individual administering analytical tests. Therefore, to the extent our precedent interpreted the state toxicologist's statutory authority under N.D.C.C. § 39–20–07, those interpretations will now be applied to the authority held by "the director of the state crime laboratory or the director's designee."

[¶ 10] The Department also argues we should infer Eder was a designee of the director, because the documents that were admitted into evidence are the same ones which are electronically posted with the state crime laboratory division of the attorney general at the attorney general website, and a crime laboratory director's memo showing Eder is a designee of the director is available on the state crime laboratory website. However, this document was not offered into evidence at the administrative hearing. It has not been admitted as prima facie evidence in this record. While section 39–20–07, N.D.C.C., was codified to ease the burden of the Department in laying an evidentiary foundation for blood-alcohol reports by allowing the admittance of scrupulously completed documents in lieu of lengthy testimony, we still recognize that certain foundational elements must be shown, by some form of evidence, in order to admit a report:

> First, the sample must be properly obtained. Second, the blood test must be fairly administered. Third, the method and devices used to test the sample must be approved by the [director of the state crime laboratory or the director's designee]. Finally, the blood test must be performed by an authorized person or by one certified by the [director of the state crime laboratory or the director's designee] as qualified to perform it.

*State v. Jordheim,* 508 N.W.2d 878, 881 (N.D.1993).

[¶ 11] Without evidentiary proof that Eder was a designee of the director, two of the foundational elements of N.D.C.C. § 39–20–07 were not met. Since a copy of the director's appointment of Eder as designee is available on the state crime laboratory website, it would have been "a simple matter to obtain the listing and admit it into evidence." *Painte,* 2013 ND 95, ¶ 29, 832 N.W.2d 319 (VandeWalle, C.J., concurring and dissenting) (citation omitted). Unlike *Painte,* no other evidence was offered which identified Eder as a designee of the director. The testimony offered at the administrative hearing did not establish this fact. Because the record does not contain prima facie evidence Eder was a designee of the director, we conclude proper foundation for the Intoxilyzer test results was not laid, and the administrative hearing officer erred in admitting the Intoxilyzer test results. We hold the administrative hearing officer's findings of fact were not supported by a preponderance of the evidence, and the decision is not in accordance with the law.

## IV

[¶ 12]   Frank also argues the requirements of N.D.C.C. § 39–20–07(5) were not met because it was not shown that the director of the state crime laboratory or the director's designee approved the methods used to obtain Frank's breath test. Copies of the approved methods for operating the Alco–Sensor FST and the Intoxilyzer were offered into evidence. These copies were signed by Hope Olson, who is the director of the state crime laboratory, but her title was not included on the documents. Frank argues that, because Olson was not identified as director of the state crime laboratory on these documents, it was not shown that the director of the state crime laboratory or the director's designee approved the methods used to obtain Frank's breath test. Because of our disposition, we need not address this issue. *See Sorenson v. Alinder*, 2011 ND 36, ¶ 7, 793 N.W.2d 797.

## V

[¶ 13]   We reverse the district court judgment.

[¶ 14]   GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS, JJ., and WILLIAM A. NEUMANN, S.J., concur.

[¶ 15]   The Honorable William A. Neumann, S.J., sitting in place of Sandstrom, J., disqualified.