2015 ND 194

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Michael Dale FILKOWSKI, Defendant and Appellant.**

**No. 20140344.**

Supreme Court of North Dakota.

Aug. 6, 2015.

Rehearing Denied Sept. 17, 2015.

Charles B. Neff, Jr., McKenzie County Assistant State's Attorney, Watford City, ND, for plaintiff and appellee.

Michael R. Hoffman, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Michael Filkowski appealed from a criminal judgment after a jury found him guilty of driving under the influence while operating a motor vehicle. We affirm.

I

[¶ 2] Filkowski was stopped by a McKenzie County Deputy Sheriff for driving outside of the traffic lane. The deputy detected the smell of alcohol and observed that Filkowski's speech was slurred. A Highway Patrol officer arrived and made the same observations. After conducting field sobriety tests, Filkowski was placed under arrest for driving under the influence. He was transported to a local hospital where he consented to a blood alcohol test. The results of the blood alcohol test indicated Filkowski had a blood alcohol level above the legal limit.

[¶ 3] At trial, Filkowski objected to the admission into evidence of certain documents offered by the State. A Submission for Blood form was objected to based on a lack of foundation. The State subsequently introduced a "Memo Regarding Designees of the State Crime Laboratory

Director" without objection. The memorandum, authored by Hope Olson, Director of the State Crime Laboratory, appointed and authorized Charles Eder and Kali Hieb to sign and certify records.

[¶ 4] Hieb was called as a witness and testified she was designated by the Director of the State Crime Laboratory to sign and certify records, but was not designated to approve any method, device, or individual qualified to perform a blood alcohol test. During her testimony, the State introduced additional · documents over Filkowski's objections including: (1) List of Approved Designations of Individuals Medically Qualified to Draw Blood (September 29, 2011); (2) List of Individuals Certified to Conduct Blood Alcohol Analysis (August 1, 2012); (3) List of Approved Biological Alcohol Analysis Instruments (July 1, 2013); and (4) Toxicology Alcohol/Volatiles Analytical Report on Michael Filkowski. The first three documents were certified by Eder, with the fourth certified by Hieb.

[¶ 5] The district court determined Filkowski failed to provide sufficient proof that Ms. Hieb was not a designee of the Director of the State Crime Laboratory and overruled the objections. The jury returned a verdict finding Filkowski guilty.

## II

[¶ 6] Filkowski argues the requirements of N.D.C.C. § 39–20–07(5) were not met because no evidence was introduced that the North Dakota Director of the State Crime Laboratory or Director's designee approved of the methods, devices, or individuals contained in the State's exhibits: This is similar to a previous foundational challenge made in *Filkowski v. N.D. Dep't of Transp.*, 2015 ND 104, ¶¶ 19–21, 25–28, 862 N.W.2d 785. The relevant portion of N.D.C.C. § 39–20–07 reads:

5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee. The director of the state crime laboratory or the director's designee is authorized to approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the individual requested to take the chemical test.

6. The director of the state crime laboratory or the director's designee may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the director of the state crime laboratory or the director's designee for appropriate action. Upon approval of the methods or devices, or both, required to perform the tests and the individuals qualified to administer them, the director of the state crime laboratory or the director's designee shall prepare, certify, and electronically post a written record of the approval with the state crime laboratory division of the attorney general at the attorney general website, and shall include in the record:

   a. An annual register of the specific testing devices currently approved, in-

cluding serial number, location, and the date and results of last inspection.

b. An annual register of currently qualified and certified operators of the devices, stating the date of certification and its expiration.

c. The operational checklist and forms prescribing the methods currently approved by the director of the state crime laboratory or the director's designee in using the devices during the administration of the tests.

d. The certificate of the director of the state crime laboratory designating the director's designees.

e. The certified records electronically posted under this section may be supplemented when the director of the state crime laboratory or the director's designee determines it to be necessary, and any certified supplemental records have the same force and effect as the records that are supplemented.

f. The state crime laboratory shall make the certified records required by this section available for download in a printable format on the attorney general website.

7. Copies of the state crime laboratory certified records referred to in subsections 5 and 6 that have been electronically posted with the state crime laboratory division of the attorney general at the attorney general website must be admitted as prima facie evidence of the matters stated in the records.

N.D.C.C. § 39–20–07(5–7). The purpose of this section was to ease "the burden of the prosecution in laying an evidentiary foundation for a blood-alcohol report." *Painte v. N.D. Dep't of Transp.*, 2013 ND 95, ¶ 19, 832 N.W.2d 319.

[¶ 7] The State's introduction of the "Memo Regarding Designees of the State Crime Laboratory Director" stated, "[i]n accordance with N.D.C.C. ch.... 39–20, ... I appoint and authorize the following persons to sign and certify records as a designee of the Director of the State Crime Laboratory, a Division of the Office of the North Dakota Attorney General: Charles E. Eder, State Toxicologist ... Kali Hieb, Forensic Scientist." Filkowski argues this is insufficient foundation establishing Eder as a designee of the Director of the State Crime Laboratory because the document only designated him to "sign and certify records" and did not designate him to approve any device, method, or person under the statute.

[¶ 8] We have previously held that there must be evidence on record indicating the designee of the Director of the State Crime Laboratory to complete the foundational support of subsequent documents approving chemical test operators, methods, and testing devices. *Frank v. N.D. Dep't of Transp.*, 2014 ND 158, ¶¶ 6–7, 849 N.W.2d 248. In that case, no foundational evidence was offered indicating the director designated the person certifying the records under N.D.C.C. § 39–20–07. *Frank*, at ¶ 11. Here, both Eder and Hieb had foundational support indicating they were designated for the purposes of N.D.C.C. ch. 39–20 by the director to certify state crime laboratory records. Certified copies of those records which are electronically posted must be admitted as prima facie evidence of the matters stated therein. N.D.C.C. § 39–20–07(7).

[¶ 9] We also note N.D.C.C. § 54–12–24 establishing the State Crime Laboratory as a division of the office of Attorney General and, in particular, subsection 2 of that section which provides:

The state crime laboratory shall employ the services of a qualified toxicologist who must be the state toxicologist. The attorney general shall appoint the state

toxicologist. The attorney general may appoint such qualified deputy state toxicologists as may be necessary to exercise the authority and responsibility prescribed by law for the state toxicologist. The results of toxicological or chemical testing or analysis, other than provided for in section 39–20–13, made by the state toxicologist at the request of law enforcement agencies for criminal investigation may not be disclosed directly or indirectly by the state toxicologist or any agent or employee of the attorney general to anyone other than the person or agency requesting the test or analysis or to any other person upon whom the toxicological or chemical test was performed or the person's authorized representative, except the state toxicologist may permit the inspection of the reports of any such test or analysis results by any other person having a proper interest therein as determined by the director of the state crime laboratory.

[¶ 10] The record establishes Eder and Hieb as the director's designees. While Filkowski argues a distinction between a designee for the purpose of certifying records and one for approval of methods, devices, or individuals, the document is sufficient to establish prima facie evidence of Eder's status as the director's designee as outlined in the statute. *Painte*, 2013 ND 95, ¶ 25, 832 N.W.2d 319. Eder's status as designee provides foundation for subsequent documents introduced certifying proper methods, devices, and individuals administering chemical testing. The State should have introduced the document on the Attorney General's website specifically designating Eder, the State Toxicologist, "to determine the qualifications or credentials for being medically qualified to draw blood and issue a list of approved designations, approve satisfactory devices and methods of chemical analysis and determine the qualifications of individuals to conduct such analysis, and sign and certify records of the State Crime Laboratory" as well as the document designating Eder and other persons identified as forensic scientists to sign and certify records of the State Crime Laboratory. However, the latter certification when viewed in the light of the provisions of N.D.C.C. § 54–12–24 which requires the appointment of a "qualified toxicologist" as the State Toxicologist, is sufficient to shift the burden to the driver to disprove Eder's status as the director's designee. Filkowski did not meet that burden. The district court correctly admitted the State's exhibits.

III

[¶ 11] We affirm the district court's judgment.

[¶ 12] DALE V. SANDSTROM, LISA FAIR McEVERS, DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.