2015 ND 271

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**Robert Paul GACKLE, Defendant and Appellant.**

**No. 20150090.**

Supreme Court of North Dakota.

Dec. 1, 2015.

Ladd R. Erickson (on brief), Washburn, ND, for plaintiff and appellee.

Michael R. Hoffman (on brief), Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1]   A jury found Robert Gackle guilty of driving while under the influence of intoxicating liquor.   He appeals from the criminal judgment.   We affirm.

I

[¶ 2]   A McLean County Sheriff's Deputy pulled Gackle over after the deputy

observed Gackle speeding. The deputy noticed Gackle appeared intoxicated and asked Gackle for permission to search his vehicle; Gackle consented. During the search, the deputy found a crushed beer can. The deputy then requested Gackle submit to field sobriety tests; Gackle complied. After Gackle performed the tests, the deputy placed him under arrest and drove him to the Turtle Lake Hospital. At the hospital, the deputy read Gackle the implied consent advisory and requested he submit to a blood draw. Gackle consented, a nurse drew his blood, and the deputy delivered the blood sample to the North Dakota State Crime Laboratory. A forensic scientist at the crime laboratory performed a chemical test on Gackle's blood sample, and the test result was .21% alcohol by volume.

[¶ 3] The State charged Gackle with driving under the influence of intoxicating liquor. Gackle moved to suppress the test results, and the district court denied his motion. The State then made a motion in limine. In the motion, the State notified the court:

The state plans to offer the test through the chemist that conducted the test after the Court hears the foundation for the blood draw from the arresting officer and nurse. The state does not plan to go through the purely academic exercise of placing the documents related to blood testing found on the Attorney General's website into evidence. . . .

The state is attaching the documents in question to this motion. If they are needed in order for the Court to allow the jury to review the test results, the state will go through the exercise of admitting them at trial. However, the state does not intend to do so unless otherwise directed by the Court because the state believes the law does not re-

quire the jury have the exhibits before it.

During the hearing on the motion in limine, the court preliminarily indicated:

THE COURT: Well, all right. I will give you how I tend to rule, and I'll listen to any objections tomorrow. I've ruled in the past that if the lab technician and nurse and officer testify, that it is simply an evidentiary issue, and if somebody claims that this technician is not on the list or didn't use the approved method, which I assume the person will testify they do, then you can make your objection that we don't have the document into evidence. But I honestly don't think that is a valid objection, but I will listen to it and I will make further ruling.

In my mind, all of those documents were for admitting evidence before we had to call in the lab technician, in the sense it was a paper case and therefore every document had to come in so the documents then proved enough evidence to allow the officer to put in the lab results. We are not there anymore. We have to have a live witness. The defense has an opportunity to cross-examine that witness, to have that witness testify what that approved method is and what machines they used, et cetera. That's how I look at it. I guess I can't tell you any more than that.

[¶ 4] The case went to trial. During the trial, the district court heard testimony from the deputy, the nurse who drew Gackle's blood, and the forensic scientist who performed chemical testing on Gackle's blood sample. The State offered a report of Gackle's blood test results into evidence. The results were accompanied by a sworn affidavit from the forensic scientist. The affidavit stated, among other things: "the analysis of the blood sample has been performed according to the meth-

od and with a device approved by the State Toxicologist and I am certified by the State Toxicologist to conduct blood analysis...." Gackle objected to admission of the results; he argued:

> MR. HOFFMAN: Okay. Your Honor, again, I would object to this document. It contains hearsay statements about approved method. He's not a designee for purposes of 39–20–07(5). That foundation has not been established. So it's hearsay and foundation objections to this document.
>
> THE COURT: He just testified he ran the test and signed it. So he is the one who did the test, correct?
>
> MR. HOFFMAN: I agree that he testified he's the one that did the test, yes.
>
> THE COURT: I want to make sure we're getting beyond that. So your objection is—
>
> MR. HOFFMAN: 39–20–07(5), it's not been shown that the method used here in this case or the devices or the persons, even himself, have been approved by the director of the crime laboratory which is Hope Olson or Hope Olson's designee. He states he's a designee in this document. But he's testified today that he's only a designee for certifying true and correct copies. He's not a designee for purposes of approving methods, devices, and persons.

The court admitted the test result over Gackle's objection, and the jury found Gackle guilty. He appeals.

## II

[¶ 5] Gackle argues the officer's reading of the implied consent advisory coerced him into consenting to the blood-alcohol test, and thus his consent to the test was involuntary and the test unconstitutional. "This Court has previously determined, in the context of post-arrest chemical tests, that the state's implied consent statute, which criminalizes refusal, is not coercive merely by the reading of the advisory." *State v. Nagel*, 2014 ND 224, ¶ 12, 857 N.W.2d 374. *See also State v. Harris*, 2015 ND 45, ¶ 1, 861 N.W.2d 173; *State v. Beylund*, 2015 ND 27, ¶ 1, 861 N.W.2d 172; *State v. Smith*, 2014 ND 152, ¶ 21, 849 N.W.2d 599; *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 24, 848 N.W.2d 659. In *Smith*, the defendant claimed his submission to the Intoxilyzer 8000 test was coerced because he was read the implied consent advisory. This Court found no evidence was offered to show coercion, and therefore the district court did not err when it denied the defendant's motion to suppress. *Smith*, at ¶ 21. In the present case, as in *Smith*, Gackle did not allege any facts that indicate his consent was coerced. Rather, he simply argues: "he only submitted to the test so he would not be charged with the crime of refusal and automatically be guilty of DUI. This is evidence of actual coercion and involuntariness...." Consequently, because the record provides no indication that Gackle's consent was otherwise coerced, and reading of the advisory does not constitute per se coercion, the district court did not err.

## III

[¶ 6] Gackle also argues the blood test results were inadmissible because the State did not show the director of the State Crime Laboratory or the director's designee approved the methods, devices, or individuals involved in the administration of Gackle's blood test. Thus, Gackle asserts, "[t]he State failed to put in any evidence to meet the foundation requirements of N.D.C.C. § 39–20–07(5)."

[¶ 7] We review a district court's admission of evidence for an abuse of discretion. *S.L.W. v. Huss*, 2014 ND 169, ¶ 8, 852 N.W.2d 367. "A court abuses

its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

## A

[¶ 8] In administrative cases, "[t]he Department's authority to suspend a person's license is given by statute and is dependent upon the terms of the statute." *Frank v. Dir., N.D. Dep't of Transp.*, 2014 ND 158, ¶ 5, 849 N.W.2d 248 (quoting *Aamodt v. N.D. Dep't of Transp.*, 2004 ND 134, ¶ 15, 682 N.W.2d 308). Section 39–20–07, N.D.C.C., applies to blood test results, and it provides:

[E]vidence of the amount of alcohol concentration or presence of other drugs, or a combination thereof, in the individual's blood, breath, or urine at the time of the act alleged as shown by a chemical analysis of the blood, breath, or urine is admissible. For the purpose of this section:

. . . .

5. The results of the chemical analysis *must be received in evidence when* it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the director of the state crime laboratory or the director's designee, and by an individual possessing a certificate of qualification to administer the test issued by the director of the state crime laboratory or the director's designee. The director of the state crime laboratory or the director's designee is authorized to approve satisfactory devices and methods of chemical analysis and

determine the qualifications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who exhibit the certificate upon demand of the individual requested to take the chemical test.

. . . .

8. A certified copy of the analytical report of a blood or urine analysis referred to in subsection 5 and which is issued by the director of the state crime laboratory or the director's designee must be accepted as prima facie evidence of the results of a chemical analysis performed under this chapter. The certified copy satisfies the directives of subsection 5.

(Emphasis added.) The method of introducing prima facie evidence of blood test results is the normal method used in administrative proceedings.

[¶ 9] However, when the prosecution complies with normal evidentiary procedures, the court may properly admit blood test results when evidence shows the sample was properly obtained and the test was fairly administered. "The statute says the chemical analysis *must be received* when it is shown the test was fairly administered. It does not say 'it may not be received unless . . . .' N.D.C.C. § 39–20–07(5)." *State v. Keller*, 2013 ND 122, ¶ 9, 833 N.W.2d 486 (emphasis in original). Rather, the statutory framework for admission of blood test results is a "shortcut." *See Painte v. Dir., Dep't of Transp.*, 2013 ND 95, ¶ 20, 832 N.W.2d 319; *see also Schlosser v. N.D. Dep't of Transp.*, 2009 ND 173, ¶ 10, 775 N.W.2d 695. "The statute . . . eases the burden of the prosecution in laying an evidentiary foundation for a blood-alcohol report and balances procedural efficiency and scientific reliability by allowing scrupulously completed

documents as evidence in lieu of lengthy testimony." *State v. Asbridge*, 555 N.W.2d 571, 573 (N.D.1996); *see also State v. Jordheim*, 508 N.W.2d. 878, 881 (N.D.1993). Thus, normal evidentiary procedures may still be used rather than the. statutory method of blood test authentication:

> If the documentary evidence and the testimony of the participants in administering the test do not show scrupulous compliance with the methods approved by the State Toxicologist, the statutory mode of authentication cannot be used. In that case, the general rule of NDREv 901(a) applies and, a majority of this [C]ourt holds, "the State must establish that there were sufficient indicia of reliability in the collection and submission of the blood sample" through expert testimony that establishes fair administration of the test.

*Jordheim*, at 882 (quoting *State v. Nygaard*, 426 N.W.2d 547, 549 (N.D.1988)); *see also Asbridge*, at 573–74 (explaining § 39–20–07 is not the exclusive method for admission of test results and the § 39–20–07(7) requirement that certified documents be accepted as prima facie evidence "does not suggest the legislature intended [that] certified lists ... are the only documents that will furnish the foundation for admission of a blood-test result"); *State v. Vetsch*, 368 N.W.2d 547, 552–53 (N.D.1985) (quoting, with approval, an Arizona Supreme Court case that expressly held a similar statute was not the only method for offering test results, but rather "a workable, reasonable method provided as an alternative to the method of admission under the Rules of Evidence. Either party may use either method.").

### B

▮ [¶ 10] Gackle suggests *Painte*, 2013 ND 95, 832 N.W.2d 319, and *Frank*, 2014 ND 158, 849 N.W.2d 248, support his argument. In *Painte*, this Court held that N.D.C.C. § 39–20–07 required that evidence on the record. must show the individual certifying the blood test report was either the director of the crime laboratory or the director's designee. A majority of this Court determined an individual's own sworn statement that she was a designee was sufficient for this purpose. *Painte*, at ¶ 25. *See also Frank*, at ¶ 7 (discussing the holding in *Painte* ).

[¶ 11] In *Frank*, this Court held an administrative hearing officer erred when the officer admitted test results into evidence. 2014 ND 158, ¶ 11, 849 N.W.2d 248. The hearing officer, applying N.D.C.C. § 39–20–07, introduced a list of approved testing devices and a list of certified chemical operators. *Id.* at ¶ 6. However, these lists were certified by Charles Eder, the state toxicologist, and there was no evidence in the record that Eder was a designee of the director of the state crime laboratory as required by the statute's language. *Id.* We explained:

> Without evidentiary proof that Eder was a designee of the director, two of the foundational elements of N.D.C.C. § 39–20–07 were not met. Since a copy of the director's appointment of Eder as designee is available on the state crime laboratory website, it would have been "a simple matter to obtain the listing and admit it into evidence." *Painte*, 2013 ND 95, ¶ 29, 832 N.W.2d 319 (VandeWalle, C.J., concurring and dissenting) (citation omitted). Unlike *Painte*, no other evidence was offered which identified Eder as a designee of the director. The testimony offered at the administrative hearing did not establish this fact. Because the record does not contain prima facie evidence Eder was a designee of the director, we conclude proper foundation for the Intoxilyzer test results was not laid, and the

administrative hearing officer erred in admitting the Intoxilyzer test results. *Id.* at ¶ 11.

[¶ 12] Neither of these cases support Gackle's position. Both were administrative hearing cases where the hearing officer was relying solely on the § 39–20–07 eased burden—or shortcut—to offer test results. In this case, the State chose to take the longer route. It called every individual involved in administration of the test, and it had the forensic scientist testify in detail regarding testing procedures and mechanics. In other words, the State chose to follow normal evidentiary rules and establish foundation for admission of the test results by bringing live witnesses to court. Thus, *Painte* and *Frank* do not support Gackle's assertion that the blood test results were inadmissible because the State did not meet the statutory requirements to establish prima facie evidence.

C

[¶ 13] Because the blood test was offered using normal evidentiary procedure, we are left with the question of whether the State provided sufficient evidence to authenticate the results. Under N.D.R.Ev. 901, evidence may be authenticated by the testimony of a witness with knowledge. To authenticate blood test results, the State must show the blood test is supported by "sufficient indicia of reliability" and that the test was fairly administered. *Jordheim,* 508 N.W.2d at 882. "Whether a blood test was fairly administered is a preliminary question of admissibility left to the discretion of the trial judge." *Keller,* 2013 ND 122, ¶ 7, 833 N.W.2d 486 (quoting *State v. Zimmerman,* 516 N.W.2d 638, 642 (N.D.1994)).

[¶ 14] In this case, the district court heard testimony from every individual involved in the administration of Gackle's blood test. The nurse who drew his blood sample testified that she drew Gackle's blood using an unopened blood test kit and, after she drew the sample, she handed it to the deputy. The deputy testified that after the nurse handed him the sample, he "filled out the proper seals, sealed the tube, put it inside the bag and filled out the paperwork, and sealed that inside the kit." He also testified he hand delivered the kit to the crime laboratory. The crime laboratory technician testified the kit was sealed when it arrived at the crime laboratory. The technician also explained, in detail, the protocol the laboratory uses for testing blood samples and how laboratory equipment measures alcohol content in the blood. The technician stated he followed laboratory protocol, and he filled out the blood test result report form and signed it. Given this comprehensive and detailed testimony, we conclude the district court did not abuse its discretion when it admitted the blood test results.

IV

[¶ 15] We affirm the judgment.

[¶ 16] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.