# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 154

State of North Dakota,                                    Plaintiff and Appellee

  v.

Brett Harvey Lyman,                                    Defendant and Appellant

## No. 20200321

Appeal from the District Court of Foster County, Southeast Judicial District, the Honorable James D. Hovey, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Ashley L. Lies, Assistant State's Attorney, New Rockford, ND, for plaintiff and appellee; submitted on brief.

Michael R. Hoffman, Bismarck, ND, for defendant and appellant; submitted on brief.

**Jensen, Chief Justice.**

[¶1] Brett Lyman appeals from a criminal judgment entered after a jury found him guilty of driving with a blood-alcohol content greater than .08%. He argues the district court abused its discretion by admitting into evidence his blood test results without the State first establishing his blood sample had been collected using the approved method for collecting a blood specimen. We affirm the judgment.

I

[¶2] Lyman was convicted of driving with a blood-alcohol concentration over the legal limit in violation of N.D.C.C. § 39-08-01(1)(a). During the trial, the arresting officer, the nurse who drew Lyman's blood, and the forensic scientist who analyzed his blood all testified to various aspects of the process of collecting Lyman's blood sample. Lyman objected to the admission of the blood test results arguing the State had failed to establish the sample was collected in accordance with the State Toxicologist's approved method for collecting blood samples. The district court admitted Lyman's blood test results into evidence over his foundational objections.

[¶3] The jury returned a verdict of guilty. Lyman moved for judgment of acquittal. He argued the evidence did not establish the nurse inverted the vial after she drew Lyman's blood as required by the State Toxicologist's approved method. He also argued the evidence did not show each of the steps on the specimen submitter's checklist at the bottom of Form 104 were followed. Lyman's motion was denied.

II

[¶4] Lyman argues the district court erred when it admitted his blood test results because his blood sample was not collected in accordance with the approved method. Determination of "[w]hether a blood test was fairly

administered is a preliminary question of admissibility left to the district court's discretion." *State v. Van Zomeren*, 2016 ND 98, ¶ 8, 879 N.W.2d 449.

[¶5] Under N.D.C.C. § 39-20-07(5), a district court may receive blood test results into evidence when the State proves the sample was "properly obtained and the test was fairly administered" and the test was performed according to the "methods and with devices approved by the director of the state crime laboratory."

> Section 39-20-07, N.D.C.C., "purposely eases the burden of the prosecution in laying an evidentiary foundation for a blood-alcohol report." *State v. Jordheim*, 508 N.W.2d 878, 881 (N.D. 1993). Blood test results are admissible if the State can show (1) the sample was properly obtained, (2) the test was fairly administered, (3) the testing method and devices were approved by the State Toxicologist and (4) the person conducting the test was authorized or was certified by the State Toxicologist as qualified to perform the test. *Id*. These four requirements may be established by documents in lieu of testimony. *Id*.

*State v. Schwab*, 2008 ND 94, ¶ 8, 748 N.W.2d 696. If the documentary evidence and the testimony does not show scrupulous compliance, the statutory mode of authentication may not be used and the State must establish fair administration of the blood test through expert testimony according to the North Dakota Rules of Evidence. *State v. Gackle*, 2015 ND 271, ¶ 9, 871 N.W.2d 589.

III

[¶6] The approved method for collecting a blood specimen, as set out on Form 104, requires the blood be drawn into the collection tube and "[i]nverted [s]everal [t]imes." "[T]he purpose of inverting the tube several times is to prevent clotting by mixing the blood with a powder chemical inside the tube." *Van Zomeren*, 2016 ND 98, ¶ 11.

[¶7] Lyman claims a video of the nurse drawing his blood shows the sample was not inverted several times. He asserts the video shows that "[a]t the conclusion of the drawing of Mr. Lyman's blood the blood tube is almost

immediately laying on a tray. It defies logic and the laws of physics to believe the nurse inverted the tube several times."

[¶8] The nurse who collected Lyman's blood sample was shown the video at trial. She maintained she inverted the sample and testified as follows:

> Q. So we watched that portion again. So you're finishing the blood draw and the officer's holding up his cell phone, and it does block the view for a bit; right?
>
> A. Correct.
>
> Q. But it appears that almost immediately the blood tube is laying on the tray; correct?
>
> A. There's a couple of seconds there. It doesn't take very long to go like that (gesturing). We can rewind it again if you'd like to.
>
> Q. So your testimony would be the same, that you did invert the blood tube?
>
> A. Correct.

[¶9] The forensic scientist was also asked whether the blood sample was clotted or looked typical, and she responded: "It looked typical." The district court admitted the blood test results into evidence explaining: "The testimony presented from the nurse indicated that she performed all of the items on the checklist."

[¶10] Lyman is correct that the video does not show the nurse inverting the blood tube. However, there is a brief period of time the tube is not visible and the nurse who collected the blood sample testified the tube was inverted during that brief period of time. The forensic scientist subsequently confirmed the blood sample looked like a typical sample. While the video evidence does not include confirmation the tube was inverted, the video evidence also does not contradict the testimony the tube was inverted during the brief period of time it was not visible in the video. *See e.g. Crawford v. Dir., N.D. Dep't of Transp.*, 2017 ND 103, ¶ 7, 893 N.W.2d 770 ("Our review of the video of the traffic stop

does not contradict the arresting officer's testimony, and we do not reweigh that evidence or reassess the arresting officer's credibility."). We conclude the district court did not abuse its discretion in admitting the blood test results over Lyman's objection the State had failed to establish the blood tube had been inverted as required by the approved method for collecting a blood sample.

IV

[¶11] Form 104 provides a checklist of instructions to be completed by the blood specimen collector. The bottom portion of the form was not received into evidence and Lyman argues the testimony at trial was insufficient to establish all of the instructions on the form had been followed.

[¶12] We have previously considered the absence of a completed Form 104 in conjunction with testimony regarding compliance with the instructions for collecting a blood sample. *See State v. Keller*, 2013 ND 122, ¶ 3, 833 N.W.2d 486. In *Keller*, the arresting officer did not complete the bottom portion of Form 104, but he testified about the steps that took place while acquiring the blood sample. *Id*. We affirmed Keller's conviction explaining testimony can establish scrupulous compliance in the absence of a completed form:

> The deputy's failure to complete the "specimen submitted by" portion of Form 104 by not filling in his name does not fail our requirement of "scrupulous compliance." His detailed testimony of the steps he undertook to properly administer Keller's blood test reflects the trial court's conclusion that the scientific reliability or accuracy of the test was not compromised by his failure to put his name on the form, and we conclude the district court did not abuse its discretion in admitting it.

*Id*. at ¶ 13.

[¶13] Lyman argues the testimony at trial did not establish steps two through five of the specimen submitter's checklist were followed. A blank Form 104 detailing the checklist was admitted into evidence revealing the following instructions:

4

☐ Used an Intact Kit.

☐ Affixed Completed Specimen Label/Seal Over the Top and Down the Sides of the Blood Tube.

☐ Placed the Blood Tube Inside the Blood Tube Protector and Then Placed it in the Plastic Bag Provided. **(Do Not Remove Liquid Absorbing Sheet.)**

☐ Placed the Plastic Bag and Completed Top Portion of This Form in the Kit Box and Closed It.

☐ Affixed Tamper-Evident Kit Box Shipping Seal on Kit Box.

[¶14] The second step requires a label/seal be affixed over the top and down the sides of the blood tube. The district court noted that when the arresting officer was questioned about whether there were any identifying marks on the label affixed to the vial, he testified, "I believe there was an initial mark." The court also noted the forensic scientist testified there was nothing unusual about the blood test kit when she received it. We conclude the court did not abuse its discretion in admitting the blood test results based on the testimony that the second step had been completed in accordance with the approved method.

[¶15] The third step requires the blood tube be placed inside a tube protector and then placed in a plastic bag. The arresting officer testified the nurse used all of the materials in the kit, and the blood sample was placed in a plastic bag. Lyman asserts that testimony is insufficient because it does not confirm compliance with the notation in step three, which provides: "(Do Not Remove Liquid Absorbing Sheet.)." The district court found the testimony of the forensic scientist, who analyzed the blood sample confirming there was nothing unusual about the kit or the way it was presented, was sufficient to find the approved method had been followed. We conclude the court did not abuse its discretion in admitting the blood test results based on the testimony that the third step had been completed in accordance with the approved method.

[¶16] The fourth step requires the plastic bag and the top portion of Form 104 to be placed into the kit box and closed. The arresting officer testified the plastic bag was placed into the box. We conclude the district court did not abuse

its discretion in admitting the blood test results based on the testimony that the fourth step had been completed in accordance with the approved method.

[¶17] The fifth step requires a tamper-evident shipping seal be placed on the box. The arresting officer testified the box was sealed, but he could not remember whether he or the nurse sealed it. We conclude the district court did not abuse its discretion in admitting the blood test results based on the testimony that the fifth step had been completed in accordance with the approved method.

V

[¶18] Although the video did not show the blood sample tube had been inverted as required by the approved method, the video did not contradict testimony that the inversion occurred during a brief period of time the blood sample tube was not visible in the video. We conclude the district court did not abuse its discretion in admitting Lyman's blood test results over the objection that the State had failed to establish the inversion of the blood sample tube had occurred in accordance with the approved method. Although a completed checklist from Form 104 had not been admitted into evidence, the court did not abuse its discretion in determining the record contained sufficient testimony to establish the blood sample had been collected in accordance with the approved method. We affirm the judgment.

[¶19] Jon J. Jensen, C.J.
     Gerald W. VandeWalle
     Daniel J. Crothers
     Lisa Fair McEvers
     Jerod E. Tufte